**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

"NATHAN," by guardian, parent, and next friend "CLARA," c/o American Civil Liberties Union Foundation, 915 15th St., Washington, DC 20005;

"PATRICIA," c/o American Civil Liberties Union Foundation, 915 15th St., Washington, DC 20005;

"EDWARD," c/o American Civil Liberties Union Foundation, 915 15th St., Washington, DC 20005;

on behalf of themselves and all those similarly situated,

*Plaintiffs*,

v.

DONALD J. TRUMP, President of the United States, in his official capacity, 1600 Pennsylvania Ave. NW, Washington, DC 20500;

U.S. DEPARTMENT OF HOMELAND SECURITY; SECRETARY OF HOMELAND SECURITY, in their official capacity, 2702 Martin Luther King Jr. Ave. SE, Washington, DC 20528;

U.S. DEPARTMENT OF STATE; SECRETARY OF STATE, in their official capacity, 2201 C Street NW, Washington, DC 20520;

U.S. SOCIAL SECURITY ADMINISTRATION; and COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, in their official capacity, 6401 Security Blvd., Baltimore, MD 21235,

Case No. 1:26-cv-3377

*Defendants*.

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

(Unconstitutional and unlawful limitations on birthright citizenship)

1. Birthright citizenship embodies America's most fundamental promise: that all children born on our soil begin life as full and equal members of our national community, regardless of their parents' origins, status, or circumstances. This principle has enabled generations of children to pursue their dreams and build a stronger America.

2. The Framers of the Fourteenth Amendment specifically enshrined this principle in our Constitution's text to ensure that no one—not even the President—could deny children born in America their rightful place as citizens. They did so with full knowledge and intent that this would protect the children of immigrants, including those facing discrimination and exclusion.

3. The Citizenship Clause of the Fourteenth Amendment provides that "[a]ll persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States." U.S. Const. amend. XIV, § 1.

4. In *United States v. Wong Kim Ark*, the Supreme Court confirmed that nearly all children born in the United States to foreign national parents are citizens under the Fourteenth Amendment's Citizenship Clause. 169 U.S. 649 (1898). *Wong Kim Ark* identified a handful of longstanding exceptions; the only such exception relevant today is for children of foreign ministers with full diplomatic immunity. Following *Wong Kim Ark*, Congress codified birthright citizenship and its narrow exceptions in a statute whose language tracks the Fourteenth Amendment. *See* 8 U.S.C. § 1401(a).

5. In the over 125 years since the Supreme Court emphatically rejected the last effort to undercut birthright citizenship in *Wong Kim Ark*, this principle has remained undisturbed constitutional bedrock. Even through countless subsequent immigration debates, and periods of intense anti-immigrant sentiment, this core constitutional guarantee has protected generations of Americans and prevented the emergence of a hereditary underclass excluded from full participation in American life.

6. Flouting the Constitution's dictates, statutory commands, and longstanding Supreme Court precedent, Defendant President Donald Trump issued Executive Order No. 14,160, 90 Fed. Reg. 8,449 (Jan. 29, 2025), entitled "Protecting the Meaning and Value of American Citizenship" ("EO1"), which attempted to upend one of the most fundamental American constitutional values by denying citizenship to children born on American soil to a mother who is "unlawfully present" or temporarily present, and a father who is not a U.S. citizen or lawful permanent resident.

7. The Supreme Court struck down EO1 in *Trump v. Barbara*, 146 S. Ct. 2438 (2026), and reaffirmed that birthright citizenship is guaranteed by the Fourteenth Amendment and that the only exceptions to universal birthright citizenship are those described in *Wong Kim Ark*.

8. Nevertheless, the President once again seeks to carve out new exceptions to the Citizenship Clause. On August 6, 2026, the President issued Executive Order No. 14,418, *Continuing to Protect the Meaning and Value of American Citizenship*, 91 Fed. Reg. 51,991 (2026) ("EO2"), which purports to strip citizenship from persons born in the United States in various circumstances, including via surrogacy, to a parent employed by international organizations, and to a parent the government claims (often baselessly) to be a member of certain gangs.

9. For Plaintiffs—children who will be denied citizenship under EO2, and their parents—and for families across the country, EO2 seeks to strip away the "priceless treasure" of citizenship, *Fedorenko v. United States*, 449 U.S. 490, 507 (1981), threatening them with a lifetime of exclusion from society and fear of deportation from the only country they have ever known. And Defendants' implementing guidance documents threaten further widespread harm, as parents will be required to submit attestations under penalty of perjury to secure a social security number or passport. For many families, that required attestation—utilizing EO2's vague and threatening terms—will be difficult or even impossible to provide, effectively denying proof of citizenship to people even beyond those targeted by EO2.

10. EO2, like EO1, straightforwardly violates the Citizenship Clause, as well as the birthright citizenship statute, and should be enjoined.

**JURISDICTION AND VENUE**

11. This case arises under the Fourteenth Amendment to the U.S. Constitution, 8 U.S.C. § 1401, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-59. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1346 (United States as defendant), and 28 U.S.C. § 1651 (All Writs Act).

12. This Court may grant the relief sought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., 28 U.S.C. § 1331, the All Writs Act, 28 U.S.C. § 1651, and this Court's inherent equitable powers.

13. Venue is proper in the District of the District of Columbia because Plaintiff Clara resides in the District, several defendant officers and agencies reside in the District, and because a substantial part of the events giving rise to the claims occurred in the District. 28 U.S.C. § 1391(e)(1).

## PARTIES

14. Plaintiff "Clara"[1] is a citizen of France. She resides in Washington, DC. She has lived in the United States for more than ten years, and has established strong ties to her community. Clara gave birth to her child, Plaintiff "Nathan," in Washington, DC, in August 2026, after the issuance of EO2. Neither Clara nor her husband, Nathan's father, is a U.S. citizen. Both are employed by international organizations that possess international-organization immunity and are listed in 8 C.F.R. § 316.20(c), and both are present in the United States on G-4 visas.

15. Plaintiff "Edward" is a citizen of Australia. He currently resides in Australia with his wife, a cardiologist with whom he operates cardiology clinics, and his older daughter, a U.S. citizen born via surrogacy in the United States in 2021. He and his wife are currently expecting their second child through surrogacy to be born in the United States in October 2026. Edward and his wife engaged in a commercial transaction with a surrogate present in the United States to give birth.

16. Plaintiff "Patricia" is a citizen of a country in western Europe. She currently resides in the United States with her husband. Neither Patricia nor her husband is a U.S. citizen. They are expecting a child, due around April 2027. They are both employed by international organizations that possess international-organization immunity and are listed in 8 C.F.R. § 316.20(c), and both are present in the United States on G-4 visas.

17. Defendant Donald J. Trump is the President of the United States. He is sued in his official capacity. In that capacity, he issued and will oversee the implementation of EO2.

18. Defendant U.S. Department of Homeland Security ("DHS") is a cabinet-level department of the United States federal government. Its components include U.S. Immigration

[1] Plaintiffs wish to proceed under pseudonym, and a motion is forthcoming.

and Customs Enforcement ("ICE") and Customs and Border Protection ("CBP"). ICE's responsibilities include enforcing federal immigration law within the interior of the United States, including by carrying out deportations. CBP's responsibilities include inspecting and admitting people at international points of entry, including airports and land borders, and engaging in immigration enforcement near the border.

19. Defendant Secretary of Homeland Security has responsibility for overseeing enforcement and implementation of EO2 by all DHS staff. They are sued in their official capacity.

20. Defendant U.S. Department of State ("DOS") is a cabinet-level department of the United States federal government. DOS is responsible for the issuance of passports to United States citizens.

21. Defendant Secretary of State has responsibility for overseeing enforcement and implementation of EO2 by all DOS staff. They are sued in their official capacity.

22. Defendant U.S. Social Security Administration ("SSA") is an agency of the United States. SSA assigns social security numbers to U.S. citizens, including through the "Enumeration at Birth" system.

23. Defendant Commissioner of the Social Security Administration has responsibility for overseeing enforcement and implementation of EO2 by all SSA staff. They are sued in their official capacity.

## STATEMENT OF FACTS

### A. Legal Background

24. "Jus soli" is "the ancient and fundamental" principle of "citizenship by birth within the territory" of the United States. *Wong Kim Ark*, 169 U.S. at 693. This principle has its roots in English common law, *see Calvin v. Smith*, 77 Eng. Rep. 377 (K.B. 1608), and applied in the

colonial era and early years of the American republic, *see Wong Kim Ark*, 169 U.S. at 658; *Inglis v. Trustees of Sailor's Snug Harbor*, 28 U.S. 99, 164 (1830).

25. However, in the infamous case of *Dred Scott v. Sandford*, the Supreme Court held that, despite their birth in the United States, the descendants of enslaved people were "not included, and were not intended to be included, under the word 'citizens' in the Constitution." 60 U.S. 393, 404-05 (1857).

26. After the Civil War, Congress repudiated *Dred Scott* and constitutionalized the birthright citizenship rule in the Fourteenth Amendment's Citizenship Clause, which provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States." U.S. Const. amend. XIV, § 1. In so doing, the Framers strove to transform American citizenship from a race-based, two-tiered system, to one that was equally open to all regardless of their parents' heritage.

27. The Citizenship Clause was enacted with full knowledge among both proponents and opponents that it would guarantee the citizenship of children of noncitizens.

28. Accordingly, when the question of the citizenship of the child of two Chinese nationals—who at that time were barred under the Chinese Exclusion Acts from becoming U.S. citizens themselves—came before the Supreme Court in *Wong Kim Ark*, it rightly concluded that because the plaintiff had been born in the United States, he was a citizen, regardless of his parents' circumstances. 169 U.S. at 693. In *Wong Kim Ark*, the Supreme Court conclusively determined that all children born in the United States are citizens, subject only to very limited exceptions.

29. The only exception relevant today is the children of foreign diplomats with full diplomatic immunity, who, under *Wong Kim Ark*, are not "subject to the jurisdiction" of the United States. *Id*. at 658.

30. Another exception *Wong Kim Ark* noted were children born to foreign armies living in U.S. territory that those armies had conquered. *Id*. at 682-83. There is no such U.S. territory today.

31. Finally, *Wong Kim Ark* noted an exception for children born to Native Americans living within Tribal territory. *Id*. at 681. Because Tribes were sovereign entities, children born to Native Americans in their territory were deemed similar to "the children of subjects of any foreign government born within the domain of that government." *Id*. (quoting *Elk v. Wilkins*, 112 U.S. 94, 102 (1884)). Congress later conferred U.S. citizenship on all Native Americans born in the United States. Indian Citizenship Act, Pub. L. No. 68-175, 43 Stat. 253 (1924).

32. Beyond these exceptions, the Fourteenth Amendment's guarantee of birthright citizenship applies to "the children born within the territory of the United States of all other persons." *Wong Kim Ark*, 169 U.S. at 693.

33. In 1940, Congress enacted a statute that tracks the language of the Citizenship Clause. The birthright citizenship statute provides that "a person born in the United States, and subject to the jurisdiction thereof" is a citizen of the United States. 8 U.S.C. § 1401(a); *see also id.* §§ 1402, 1406(b), 1407(b). This language "[wa]s taken . . . from the fourteenth amendment to the Constitution." *To Revise and Codify the Nationality Laws of United States into a Comprehensive Nationality Code: Hearings Before the H. Comm. on Immig. and Naturalization on H.R. 6127 Superseded by H.R. 9980*, 76th Cong. 38 (1940). In 1952, the birthright citizenship statute was reenacted as part of a broader set of reforms to the naturalization laws.

34. In passing and reenacting this statute, Congress codified the long-settled interpretation of the Fourteenth Amendment, whereby all children born in the United States were citizens, subject only to the narrow exceptions identified in *Wong Kim Ark*.

**B. The First Executive Order**

35. On January 20, 2025, President Trump issued EO1.

36. EO1 purported to declare that a child born in the United States is not a citizen if, at the time of birth, their mother is either "unlawfully present in the United States" or their "mother's presence in the United States was lawful but temporary," and their father was not a U.S. citizen or lawful permanent resident.

37. EO1 specified that it would apply to persons born after 30 days from its issuance.

38. A court in the District of New Hampshire provisionally certified a class of children subject to EO1 and enjoined its enforcement against the class. *Barbara v. Trump*, 790 F. Supp. 3d 80, 105 (D.N.H. 2025).

39. Defendants sought certiorari before judgment in the U.S. Supreme Court, and the Supreme Court affirmed the New Hampshire court's injunction. *Trump v. Barbara*, 146 S. Ct. 2438 (2026).

40. In its ruling, the Supreme Court confirmed that the only exceptions to the jus soli rule are those listed in *Wong Kim Ark*: "children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory, and with the single additional exception of children of members of the Indian tribes owing direct allegiance to their several tribes[,]" 169 U.S. at 693. *See Barbara*, 146 S. Ct. at 2452-53.

**C. The Second Executive Order**

41. Undeterred, the President issued EO2 on August 6, 2026. Like EO1, the new order seeks to carve out new exceptions to the Citizenship Clause.

42. Purporting to exercise "authority vested" "as President by the Constitution and the laws of the United States of America," EO2 purports to "identif[y], non-exhaustively," and

prescribe "action concerning certain categories of children of aliens who," the President opined, "do not fall within the rule of birthright citizenship as announced by the Supreme Court." EO2 § 1.

43. EO2 directs executive agencies not to recognize the citizenship of an individual "when neither parent of that person is a citizen" and: a) "either parent of that person is an alien enemy, defined to include" a member of certain designated terrorist organizations; b) "either parent of that person is a foreign government employee," including not only foreign ministers with full diplomatic immunity but also various other employees of foreign governments or international organizations; c) "either parent of that person engaged in a commercial transaction to purchase or access birthright citizenship for the person, or engaged in fraudulent activity to obtain citizenship"; or d) "the person is born in a territory or territorial waters of the United States where citizenship is not conferred by Federal statute." EO2 § 2.

44. EO2 does not identify any temporal limit on its purported restriction of birthright citizenship. In contrast, EO1 provides that its statement of "policy" as to exclusion of individuals from birthright citizenship "shall apply only to persons who are born within the United States after 30 days from the date of this order." EO1 § 2(b).

45. EO2 does not specify an effective date for EO2 itself. EO2 directs agency heads to "take all appropriate measures" to implement EO2, and to issue public guidance within 30 days. EO2 § 3.

46. Neither the Constitution nor any federal statute confers any authority on the President to redefine American citizenship.

47. By attempting to limit the right to birthright citizenship, EO2 (like EO1) exceeds the President's authority and straightforwardly violates the Citizenship Clause, as well as the birthright citizenship statute.

**D. The Guidance**

48. On September 4, 2026, the Department of Homeland Security issued an Interim Final Rule "amending its regulations to permit children born in the United States to 'foreign government employees' who are not U.S. citizens to register for permanent residence." *Registration of Lawful Permanent Residence for Children Born to Foreign Government Employees in the United States* *1, DHS Doc. No. USCIS-2026-0496 (Sept. 4, 2026) (to be codified at 8 C.F.R. pts. 101, 264), https://public-inspection.federalregister.gov/2026-18345.pdf ("IFR").

49. The IFR modifies the regulation published at 8 C.F.R. § 101.3, which previously reflected and recognized the principle that the only children excluded from birthright citizenship are those born to "a foreign diplomatic officer accredited to the United States," meaning "a person listed in the State Department Diplomatic List, also known as the Blue List," of those foreign ministers afforded full diplomatic immunity. 8 C.F.R. § 101.3(a) (2025); *see id*. § 101.3(b) (child of other government officials is a citizen).

50. The IFR, tracking EO2 § 2(b), states that the children of other employees of foreign governments are excluded from birthright citizenship. It adds several exceptions to this exclusion not enumerated in EO2 itself, including "[p]ersonal employees" of foreign officials, "[t]hird-country nationals working for a foreign government," and "[f]oreign government employees visiting the United States in a personal rather than an official capacity." IFR at *9-10. The IFR indicates that the parents of children excluded from birthright citizenship under EO2 "must

register" their children with federal authorities pursuant to 8 U.S.C. § 1302 or face criminal liability. *Id*. at *11.

51. The IFR was immediately effective. *Id.* at *1. To justify not engaging in notice and comment rulemaking, the IFR invokes the foreign affairs and good cause exceptions. *Id*. at *13-16. Both invocations are predicated on the assumption that the IFR "governs the registration of permanent resident status." *Id*. at *13; *see id*. at *16. The IFR does not assert that, to the extent the IFR purports to strip birthright citizenship from any person, either the foreign affairs or good cause exception would excuse notice and comment rulemaking for such alteration of longstanding citizenship rules.

52. The IFR states that "[t]he IFR applies prospectively to children born in the United States on or after the effective date of the IFR," and that "[c]hildren born in the United States before the effective date of this IFR are not subject to the requirements of this IFR." *Id*. at *7. It does not identify or rely on any temporal limitation in EO2 itself.

53. Also on September 4, the Department of State issued a "proposed Implementation Plan" for EO2. U.S. Dep't of State, *Executive Order 14418: Continuing to Protect the Meaning and Value of American Citizenship* *1 (2026), https://perma.cc/8JJJ-XD94. The document does not explain to whom the plan is proposed, or who will decide whether to approve it.

54. The State Department plan largely repeats the terms of EO2, while adding the same exceptions to EO2 § 2(b) as are set out in the IFR, "subject to individualized assessments of employment status, purpose of travel, and visa class[.]" *Id*. at *2.

55. It states that "[i]f neither parent of a minor applicant is a U.S. citizen, an attestation from each parent, under penalty of perjury, must be submitted as part of the determination whether either parent meets any of the EO conditions. Any misrepresentations made under penalty of

perjury could subject the individual(s) to legal liability, including potential federal criminal prosecution." *Id*.

56. It states: "NOTE: Because the EO is prospective only, this guidance is prospective only and will become effective upon publication subject to any legal obligations." *Id*. at *1. It does not explain its assertion that "the EO is prospective only," nor does it identify any particular date on which the EO takes effect.

57. SSA also issued guidance, indicating that "[u]nder the EO, a birth certificate showing a U.S. place of birth will not be sufficient documentary evidence of United States citizenship for persons covered by the EO" and that SSA would "require additional evidence" before issuing social security numbers. Soc. Sec. Admin., *Guidance on Continuing to Protect the Meaning and Value of American Citizenship (Executive Order 14418) for the Social Security Administration* 2 (Sept. 2026), https://perma.cc/5YWL-DTTT.

58. In particular, SSA will continue to collect parental information as part of the "Enumeration at Birth" program, and will attempt to verify if parents are U.S. citizens. *Id*. at 3. Where SSA cannot verify one parent is a U.S. citizen, it will engage in a process "to determine whether either parent" falls into a category described in EO2. *Id*. Issuance of a child's social security number under this program "may be delayed" based on "national security concerns." *Id*. at 4. If, after this investigation, "the data do not indicate [an EO2] condition has been met," SSA will contact the parents to attest to their U.S. citizenship or answer under penalty of perjury "a series of questions to determine whether either parent meets any of the EO conditions." *Id*. If SSA is not satisfied that no EO2 category applies, it will not issue the child a social security number. *See id*.

59. Several other agencies issued guidance related to their programs. *See* Ctrs. for Medicare & Medicaid Servs., U.S. Dep't of Health & Hum. Servs., *CMS Guidance on Continuing to Protect the Meaning and Value of American Citizenship (Executive Order 14418) for Medicaid and Children's Health Insurance Program (CHIP) Verification Requirements Under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 and Other Federal Statutes* (Sept. 4, 2026), https://perma.cc/94AH-PYKQ; Admin. for Child. & Fams., U.S. Dep't of Health & Hum. Servs., *ACF Guidance on Continuing to Protect the Meaning and Value of American Citizenship (Executive Order 14418) for Program Verification Requirements* (Sept. 4, 2026), https://perma.cc/R3PG-LCEB; Food & Nutrition Admin., U.S. Dep't of Agric., *Guidance on Continuing to Protect the Meaning and Value of American Citizenship (Executive Order 14418) for Verification Requirements Under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996* (Sept. 4, 2026), https://perma.cc/ZDW2-XQZP. Each likewise asserts that "the EO is prospective only" without further elaboration. *See id*.

60. Unlike EO1, neither EO2 nor the agency documents issued on September 4 exempts the children of lawful permanent residents. *See* EO1 § 2(c).

**E. Class Action Allegations**

61. The Class Representative Plaintiffs—Nathan, Clara, Edward, and Patricia—bring this action under Federal Rules of Civil Procedure 23(a) and 23(b)(2) on behalf of themselves and a nationwide class of all other persons similarly situated.

62. In this action, Class Representative Plaintiffs seek to represent the following Proposed Class: All persons, and the parents (including expectant parents) of those persons:

(1) who are born in the United States as defined in 8 U.S.C. § 1101(a)(38);

(2) who are not born to a foreign diplomatic officer accredited to the United States;

(3) for whom neither parent is a U.S. Citizen; and

(4) for whom either parent is or will be categorized by the government as falling within §§ 2(a)-(c) of Exec. Order No. 14,418, *Continuing to Protect the Meaning and Value of American Citizenship*, 91 Fed. Reg. 51,991 (2026).

63. The proposed class satisfies the prerequisites of Rule 23(a).

64. The proposed class satisfies the numerosity requirements of Fed. R. Civ. P. 23(a)(1) because the proposed class is so numerous that joinder of all members is impracticable. Relevant here, EO2 denies birthright citizenship to people born in the United States to parents who fall in any one of three different categories, and which individually and collectively contain sufficiently numerous class members. In 2020 alone, for example, some 4,713 intended parents who are not U.S. residents utilized gestational surrogates in the United States. And the State Department "Office of Foreign Missions reports that the United States hosts more than 124,000 foreign mission members and dependents." IFR at *18. Joinder is also impracticable because proposed class members are geographically dispersed across the country, and because membership in the proposed class will be constantly changing as more children are born every day under the conditions set forth in EO2.

65. The members of the proposed class are subject to a common practice, as required by Fed. R. Civ. P. 23(a)(2): the categorical denial of U.S. citizenship at birth under the terms of EO2. This suit also raises questions of law common to the proposed class, including whether the Defendants' attempt to create new exceptions to birthright citizenship violates the Citizenship Clause of the Fourteenth Amendment, 8 U.S.C. § 1401 *et seq.*, and the Administrative Procedure Act.

66. The proposed class meets the typicality requirements of Fed. R. Civ. P. 23(a)(3) because the claims of the Class Representative Plaintiffs are typical of the claims of the class. Each child and parent faces the same principal injury (denial of birthright citizenship), based on the same government practice (EO2's categorical denial of citizenship), which is unlawful as to the entire class because it violates constitutional and statutory protections.

67. The proposed class meets the adequacy requirements of Fed. R. Civ. P. 23(a)(4). The Class Representative Plaintiffs seek the same relief as the other members of the class—among other things, a declaratory judgment that Defendants' policy of denying birthright citizenship is unlawful and an injunction against that policy. In defending their rights, Class Representative Plaintiffs will defend the rights of all proposed class members fairly and adequately. The Class Representative Plaintiffs are members of the class, and their interests do not conflict with those of the other class members.

68. The proposed class is represented by experienced attorneys from the American Civil Liberties Union Foundation Immigrants' Rights Project, the ACLU of the District of Columbia, ACLU of New Hampshire, the ACLU of Massachusetts, the ACLU of Maine, the Asian Law Caucus, the NAACP Legal Defense and Educational Fund, and the Democracy Defenders Fund. Proposed Class Counsel have extensive experience litigating class action lawsuits and other complex systemic cases in federal court on behalf of noncitizens and individuals challenging government actions, including the nationwide class in *Barbara v. Trump*. The interests of the members of the class will be fairly and adequately protected by the Class Representative Plaintiffs and their attorneys.

69. The proposed class also satisfies Fed. R. Civ. P. 23(b)(2). Defendants have acted (or will act) in the same unconstitutional manner with respect to all class members by enforcing

EO2 in violation of the Constitution and federal statutes. Injunctive and declaratory relief is therefore appropriate with respect to the class as a whole.

**F. Impact of EO2 on Plaintiffs and Other Families.**

70. Defendants have taken the position that EO2 is prospective, and that those denied citizenship under EO2 will be children. Denying citizenship to children being born every day throughout the country would have devastating impacts on Plaintiffs and on the United States as a whole.

71. Stripping children of the "priceless treasure" of citizenship, *Fedorenko*, 449 U.S. at 507, is a grave injury. It denies them the full membership in U.S. society to which they are entitled.

72. Allowing EO2 to stand would "promot[e] the creation and perpetuation of a subclass" of children who were born in the United States but lack fundamental legal recognition and face stigma as a result of their novel and uncertain status. *Plyler v. Doe*, 457 U.S. 202, 230 (1982).

73. By attacking the principle that all children born in this country are citizens, EO2 will invite persistent questioning of the citizenship of children of immigrants—particularly children of color.

74. EO2's denial of these children's citizenship will also have numerous other consequences.

75. Among other things, as they become adults, these children will, if stripped of their citizenship, be denied the right to vote in federal elections, *see* U.S. Const. art. I, § 2; serve on federal juries, *see* 28 U.S.C. § 1865(b); serve in many elected offices, *see* U.S. Const. art. II, § 1,

cl. 5; *id.* art. I, § 2, cl. 2; *id.* art. I, § 3, cl. 3; and work in various federal jobs, *see, e.g.*, 35 U.S.C. § 3; 47 U.S.C. § 154(b)(1); 49 U.S.C. §§ 106(b)(1)(B)(i), 114(b)(1)(B)(i), 44935(e)(2)(A)(ii).

76. Once deemed to be noncitizens, these children will be subject to immigration enforcement by DHS, CBP, and ICE. This may include arrest, detention, and deportation to countries they have never even visited. Indeed, the IFR explains that children stripped of citizenship under EO2 may be "subject to removal from the United States." IFR at *14.

77. Improperly threatening children with arrest, detention, and deportation, and forcing them to grow up in fear of immigration enforcement, imposes harms on those children and their parents.

78. That fear is multiplied for parents who face further concern that their baby's removal would be to a country where their lives or freedom would be in danger.

79. Under 8 U.S.C. § 1302(b), "[i]t shall be the duty of every parent or legal guardian of any alien now or hereafter in the United States, who [] is less than fourteen years of age . . . to apply for the registration of" noncitizen children. Willful failure to do so is a misdemeanor. *Id.* § 1306(a).

80. The IFR indicates that children stripped of their citizenship under EO2 are subject to this registration requirement. *See* IFR at *11 (person stripped of citizenship under EO2 "must register as an alien when required to do so by" § 1302 *et seq*.). That means their parents must either effectively concede the denial of their child's citizenship (and expose their child to the threatened immigration enforcement) by registering, or themselves face criminal prosecution.

81. United States passports are issued to United States citizens. *See* 22 U.S.C. § 212; 22 C.F.R. § 51.2(a). United States passports may be used for international travel, and as identification for many other purposes.

82. Children will be ineligible for United States passports under EO2.

83. Without passports, these children may not be able to travel outside the country to visit family. This threatens to undermine family ties and prevent noncitizens from traveling abroad to, for example, visit ailing relatives or celebrate a wedding.

84. Likewise, many families rely on passports as one of the only available forms of government identification for their children, which can be vital for both practical purposes, and to prove the child's identity and relationship to their parents in cases of contact with law enforcement or other government agencies.

85. The State Department has indicated that, "[i]f neither parent of a minor [passport] applicant is a U.S. citizen, an attestation *from each parent*, under penalty of perjury, must be submitted as part of the determination whether either parent meets any of the EO conditions." U.S. Dep't of State, *Executive Order 14418: Continuing to Protect the Meaning and Value of American Citizenship* *3 (2026), https://perma.cc/8JJJ-XD94 (emphasis added). "Any misrepresentations made under penalty of perjury could subject the individual(s) to legal liability, including potential federal criminal prosecution." *Id*.

86. Parents should not be forced to parse this vague and threatening language, and make high-stakes attestations about it under penalty of perjury, just to obtain recognition of their children's constitutionally guaranteed citizenship.

87. Moreover, this new attestation requirement will likely lead to denial of passports even for children who fall outside of EO2's categories. For example, "[t]here are many U.S. Citizen children who do not know who their biological father is." Br. of Project Rousseau as Amicus Curiae in Support of Respondents 4, *Trump v. Barbara*, No. 25-365 (U.S. Feb. 26, 2025) (citing study indicating that "11.7% of all births nationwide were registered with an unknown

father"). In such cases, an attestation from that father would be unobtainable. In other situations, the father may be known but abusive. *See, e.g.*, *id.* at 5-6, 12-13.

88. Social security numbers are important for numerous aspects of life in the United States, and are often used as a de facto national identification number. They are issued to citizens. While they can also be issued to noncitizens under some circumstances, SSA has indicated it will not issue social security numbers to children of noncitizens unless it is satisfied their parents do not fall into one of the categories articulated in EO2. Denial of social security numbers will make life more complicated for these children and their families, and will cut off access to government programs, banking, employment, and numerous other facets of life in the United States.

89. EO2 may also render children legally or effectively stateless. A U.S.-born child deemed to be a noncitizen may likewise not be recognized as a citizen under the laws of their parents' country or countries of origin. Even if legally possible, practical barriers may prevent these children from being recognized as citizens of any other country.

90. Stateless people often lack access to education, employment, health care, and other rights, and face travel restrictions, social exclusion, and heightened vulnerability to violence and other harms.

91. Denying these children citizenship may also render them ineligible for critical early-life nutritional resources and medical care. *See* 8 U.S.C. § 1611.

92. For example, U.S. citizen children are eligible for SNAP. SNAP provides access to critically important groceries for low-income households.

93. Because they would be deemed noncitizens under EO2, these children risk being deemed ineligible for access to nutrition under SNAP. *See* 7 U.S.C. § 2015(f); 7 C.F.R. § 273.4.

94. Ensuring access to nutritious food during early childhood is vital for children's physical and mental development, laying a foundation for future well-being.

95. Similarly, children deemed noncitizens under EO2 risk being denied access to health coverage for which they are eligible as U.S. citizens.

96. Access to medical care plays a critical role in improving life outcomes for children and leads to improved cognitive and physical growth. Without it, children are at greater risk of avoidable hospitalizations and long-term health disparities.

97. Moreover, the denial of medical coverage may require members to forgo necessities such as food and shelter in order to pay for medical expenses.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Fourteenth Amendment to the United States Constitution
### (All Defendants)

98. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

99. The Citizenship Clause of the Fourteenth Amendment provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States." U.S. Const. amend. XIV, § 1.

100. The Citizenship Clause enshrined in the Constitution the fundamental common law rule of citizenship by birth, whereby all people born in the United States are citizens. The term "subject to the jurisdiction" excludes only a few inapplicable categories—today, just the children of foreign ministers with full diplomatic immunity. All other children born in the United States are citizens, no matter the immigration status of their parents.

101. EO2 violates the Fourteenth Amendment's Citizenship Clause because it denies citizenship to the children of noncitizens who are born in the United States and subject to the jurisdiction of the United States.

102. Defendants are engaged in an ongoing, unlawful effort to carve out new exceptions to the Citizenship Clause that began with EO1 and continues with EO2. All actions that Defendants take to deny the rights, benefits, and privileges attendant on U.S. citizenship to people who are entitled to citizenship under the Clause are unlawful.

103. This Court has equitable authority to enjoin violations of federal law by federal officers. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015).

**SECOND CLAIM FOR RELIEF**
**8 U.S.C. § 1401 *et seq.***
**(All Defendants)**

104. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

105. 8 U.S.C. § 1401(a) provides that "a person born in the United States, and subject to the jurisdiction thereof" is a citizen of the United States. *See also id.* §§ 1402, 1406(b), 1407(b).

106. This language tracks the Fourteenth Amendment's Citizenship Clause. In this statute, Congress codified the Fourteenth Amendment's existing interpretation, which established citizenship for all U.S.-born children outside of the categories elaborated in *Wong Kim Ark*.

107. EO2 violates 8 U.S.C. § 1401 *et seq.* because it denies citizenship to the children of noncitizens who are born in the United States and subject to the jurisdiction of the United States.

108. Defendants are engaged in an ongoing, unlawful effort to carve out new exceptions to 8 U.S.C. § 1401 that includes EO1 and EO2. All actions that Defendants take to deny the rights,

benefits, and privileges attendant on U.S. citizenship to people who are entitled to citizenship under § 1401 are unlawful.

109. This Court has equitable authority to enjoin violations of federal law by federal officers. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015).

**THIRD CLAIM FOR RELIEF**
**Administrative Procedure Act**
**(All Defendants except Defendant Trump)**

110. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

111. The actions of Defendants that are required or permitted by EO2, as set forth above, are contrary to constitutional right, power, privilege, or immunity, including rights protected by the Fourteenth Amendment to the U.S. Constitution, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(B).

112. Defendants are engaged in an ongoing, unlawful effort to carve out new exceptions to the Citizenship Clause that includes EO1 and EO2. All actions that Defendants take to deny the rights, benefits, and privileges attendant on U.S. citizenship to people who are entitled to citizenship under the Clause are unlawful.

**FOURTH CLAIM FOR RELIEF**
**Administrative Procedure Act**
**(All Defendants except Defendant Trump)**

113. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

114. The actions of Defendants that are required or permitted by EO2, as set forth above, violate 8 U.S.C. § 1401 *et seq.* and are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C).

115. Defendants are engaged in an ongoing, unlawful effort to carve out new exceptions to 8 U.S.C. § 1401 that includes EO1 and EO2. All actions that Defendants take to deny the rights, benefits, and privileges attendant on U.S. citizenship to people who are entitled to citizenship under § 1401 are unlawful.

**FIFTH CLAIM FOR RELIEF**
**Notice and Comment**
**(All Defendants except Defendant Trump)**

116. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

117. The Administrative Procedure Act, 5 U.S.C. § 553, requires that agencies provide public notice of, and opportunity to comment on, legislative rules before their promulgation. *See* 5 U.S.C. §§ 553(b), (c).

118. The IFR and guidance Defendants have issued in connection with EO2 are legislative rules within the meaning of the APA.

119. Defendants issued the IFR and guidance without prior notice and an opportunity for comment as required by the APA.

120. To the extent that the IFR and guidance purport to deny citizenship to any person, no "foreign affairs function of the United States" is involved that would excuse notice and comment. 5 U.S.C. § 553(a). And to the extent the IFR and guidance purport to deny citizenship to any person, there is no good cause to excuse notice and comment because "delay caused by notice and comment would do [no] real harm." IFR at *15.

121. Defendants' failure to provide for notice and comment violates 5 U.S.C. §§ 553(b) and (c), 706(2)(D).

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs request that the Court grant the following relief:

a. Certify this matter as a Class Action, appoint the Class Representative Plaintiffs as Class Representatives, and appoint the Class Representative Plaintiffs' Counsel as Class Counsel;

b. Declare that EO2 is unconstitutional and unlawful as to the class, and that Defendants may not deny or infringe on the citizenship of members of the class;

c. Preliminarily and permanently enjoin Defendants from enforcing EO2 as to the class, and from taking any actions to deny or infringe on the citizenship of members of the class;

d. Vacate and set aside the IFR and all guidance or implementation documents Defendants issue in connection with EO2;

e. Require Defendants to pay reasonable attorneys' fees and costs;

f. Grant any other and further relief that this Court may deem just and proper.

Dated: September 28, 2026

Respectfully submitted,

_/s/ Cody Wofsy_
Cody Wofsy (D.D.C. Bar No. CA00103)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
cwofsy@aclu.org

Grace Choi*
Omar Jadwat*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
gchoi@aclu.org
ojadwat@aclu.org

Lucia Goin (DC Bar No. 1739389)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION IMMIGRANTS' RIGHTS PROJECT
915 15th Street NW
Washington, DC 20005
T: (332) 529-3732
lgoin@aclu.org

Norm Eisen (DC Bar No. 435051)
Tianna Mays (DC Bar No. 90005882)
Taryn Wilgus Null (DC Bar No. 985724)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE, #15180
Washington, DC 20003
T: (202) 594-9958
norman@democracydefenders.org
tianna@democracydefenders.org
taryn@democracydefenders.org

Kimberly Wei Leung*
Winifred Kao*
ASIAN LAW CAUCUS
55 Columbus Ave
San Francisco, CA 94111
T: (415) 896-1701

SangYeob Kim*
Gilles R. Bissonnette*
Henry R. Klementowicz*
Chelsea Eddy*
Caroline Meade*
Maria Savarese*
AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE
18 Low Avenue
Concord, NH 03301
T: (603) 333-2081
sangyeob@aclu-nh.org
gilles@aclu-nh.org
henry@aclu-nh.org
chelsea@aclu-nh.org
caroline@aclu-nh.org
maria@aclu-nh.org

Elizabeth Caldwell*
Brittany Carter*
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
40 Rector St., FL 5, New York, NY 10006
T: (212) 217-1690
bcaldwell@naacpldf.org
bcarter@naacpldf.org

Morgan Humphrey* (DC Bar No. 90035952)
Mide Odunsi* (DC Bar No. 90034019)
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
T: (202) 249-2193
mhumphrey@naacpldf.org
modunsi@naacpldf.org

Carol Garvan*
Zachary L. Heiden*
Max Brooks*
AMERICAN CIVIL LIBERTIES UNION OF MAINE FOUNDATION
P.O. Box 7860
Portland, ME 04112
T: (207) 619-8687

cgarvan@aclumaine.org
heiden@aclumaine.org
mbrooks@aclumaine.org

Adriana Lafaille*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza Suite 850
Boston, MA 02108
T: (617) 482-3170
alafaille@aclum.org

kimberlyl@asianlawcaucus.org
winifredk@asianlawcaucus.org

Arthur B. Spitzer (DC Bar No. 235960)
Scott Michelman (DC Bar No. 1006945)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF COLUMBIA
529 14th Street NW, Suite 420
Washington, DC 20045
T: (202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org

*Counsel for Plaintiffs*
*****_Pro hac vice motion forthcoming_