**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| "NATHAN," *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendants*. | Case No. 1:26-cv-3377 |

**MOTION FOR CLASS CERTIFICATION**
**AND APPOINTMENT OF CLASS COUNSEL**

**TABLE OF CONTENTS**

INTRODUCTION .......... 1

I. PROPOSED CLASS DEFINITION .......... 2

II. PROPOSED CLASS REPRESENTATIVES .......... 2

ARGUMENT .......... 3

I. THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(a). .......... 4

A. The proposed class satisfies the numerosity requirement .......... 4

B. The proposed class representatives present issues of fact and law in common with the class. .......... 9

C. The class representatives' claims are typical of those of the class. .......... 10

D. The proposed class representatives and class counsel can adequately represent the class. .......... 12

II. THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(b)(2) .......... 13

CONCLUSION .......... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Keystone Plus Constr. Corp.*,
303 F.R.D. 152 (D.D.C. 2014) ........ 11

*Barbara v. Trump*,
790 F. Supp. 3d 80 (D.N.H. July 10, 2025) ........ 1, 12, 13

*Benitez Ramos v. Holder*,
589 F.3d 426, 428-29 (7th Cir. 2009) ........ 9

*Coleman ex rel. Bunn v. District of Columbia*,
306 F.R.D. 68 (D.D.C. 2015) ........ 4, 5

*CASA, Inc. v. Trump*,
No. 25-cv-201, 2026 WL 2592706 (D. Md. Sept. 2, 2026) ........ 5, 8

*D.L. v. District of Columbia*,
860 F.3d 713 (D.C. Cir. 2017) ........ 14

*Daskalea v. Wash. Humane Soc.*,
275 F.R.D 346 (D.D.C. 2011) ........ 11, 14

*Diaz Ortiz v. Garland*,
23 F.4th 1 (1st Cir. 2022) ........ 9

*In re District of Columbia*,
792 F.3d 96 (D.C. Cir. 2015) ........ 14

*Harris v. Koenig*,
271 F.R.D. 383 (D.D.C. 2010) ........ 10

*J.D. v. Azar*,
925 F.3d 1291 (D.C. Cir. 2019) ........ 9, 11

*Keepseagle v. Vilsack*,
102 F. Supp. 3d 205 (D.D.C. 2015) ........ 13

*L.G.M.L. v. Noem*,
800 F. Supp. 3d 100 (D.D.C. 2025) ........ 11

*Lewis v. Thompson*,
252 F.3d 567 (2d Cir. 2001) ........ 12

*Oliva v. Lynch*,
807 F.3d 53, 59-60 (4th Cir. 2015) ........ 9

*R.I.L-R v. Johnson*,
80 F. Supp. 3d 164 (D.D.C. 2015)........................................................................................ 5

*Robertson v. District of Columbia*,
816 F. Supp. 3d 77 (D.D.C. 2026)........................................................................................ 13

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ............................................................................................................... 4

*Taylor v. D.C. Water & Sewer Auth.*,
241 F.R.D. 33 (D.D.C. 2007) ................................................................................................ 10

*Trump v. Barbara*,
146 S. Ct. 2438 (2026) ................................................................................................... 1, 10, 12

*United States v. Wong Kim Ark*,
169 U.S. 649 (1898) .............................................................................................................. 10

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ....................................................................................................... 10, 11, 14

**Statutes**

8 U.S.C. § 1101(a)(38)............................................................................................................... 2

8 U.S.C. § 1101(a)(42)............................................................................................................... 9

8 U.S.C. § 1189.......................................................................................................................... 8

8 U.S.C. § 1302 *et seq*.............................................................................................................. 12

8 U.S.C. § 1306(a) .................................................................................................................... 12

8 U.S.C. § 1401.............................................................................................................. 1, 10, 12

50 U.S.C. § 1701 *et seq*.............................................................................................................. 8

International Organizations Immunities Act, 22 U.S.C. § 288, *et seq*. ...................................... 6

**Other Authorities**

8 C.F.R. § 316.20 ........................................................................................................................ 2

8 C.F.R. § 316.20(c)..................................................................................................................... 4

Alexandra Herweck et al., *International Gestational Surrogacy in the United States, 2014-2020*, 121 Fertility & Sterility 622, 622 (2024), https://perma.cc/XK62-ABEY......................... 7

Andorra Bruno, *What is Affirmative Asylum?* 10 (CRS Rep. No. R48249) (Oct. 24, 2024), https://perma.cc/8MQ7-9D5L .................................................................................................. 9

Application to Vacate 18-19, 32, *Trump v. J.G.G.*, No. 24A931 (Sup. Ct. Mar. 28, 2025) .......... 8

Exec. Order 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001) .......... 8

Exec. Order No. 14,160, *Protecting the Meaning and Value of American Citizenship*, 90 Fed. Reg. 8,449 (2025) .......... 1, 5

Exec. Order No. 14,418, *Continuing to Protect the Meaning and Value of American Citizenship*, 91 Fed. Reg. 51,991 (2026) .......... *passim*

Fed. R. Civ. P. 23 .......... *passim*

Isaías Alvarado, *Around 400 Employees of Mexican Consulates in the United States Face the Risk of Losing their Visas and Becoming Undocumented*, El País (Aug. 6, 2026), https://perma.cc/G5E3-RYBP. .......... 6

Katlyn Ma, *State Lawmakers to Explore Banning Foreign Nationals from Using Texas Surrogates*, Tex. Trib. (July 7, 2026), https://perma.cc/XW5Z-FHGF .......... 7

National Capital Planning Commission, *Embassies and Foreign Missions*, https://perma.cc/V32C-3EBV (last visited Sept. 30, 2026) .......... 6

Off. of Foreign Assets Control, U.S. Dep't of the Treasury, *Sanctions List Search*, https://sanctionssearch.ofac.treas.gov (last visited Sept. 28, 2026) .......... 8

Off. of Homeland Sec. Statistics, *Asylees: 2024*, https://perma.cc/B8CU-RCJU (last updated Aug. 10, 2026) .......... 9

Penelope Strid et al., *A New Tool for Estimating the Number of Pregnant People in the United States*, 145 Obstetrics & Gynecology e11, e11-e13 (Jan. 2025) .......... 7

*Registration of Lawful Permanent Residence for Children Born to Foreign Government Employees in the United States*, DHS Doc. No. USCIS-2026-0496 (Sept. 9, 2026) (to be codified at 8 C.F.R. pts. 101, 264), https://public-inspection.federalregister.gov/2026-18345.pdf .......... 6, 12

Stephanie Fillion, *The Big Picture Benefits of a UN Headquarters in New York*, Lowy Institute (Sept. 14, 2025), https://perma.cc/JL9Q-DDN8 .......... 6

U.S. Dep't of State, *Executive Order 13224*, https://www.state.gov/executive-order-13224 (last visited Sept. 28, 2026) .......... 8

U.S. Dep't of State, *Foreign Terrorist Organizations*, https://www.state.gov/foreign-terrorist-organizations/ (last visited Sept. 28, 2026) .......... 8

U.S. Dep't of State, *Table XV(B): Nonimmigrant Visas Issued by Classification (Including Border Crossing Cards), Fiscal Years 2020-2024*, in *Report of the Visa Office 2024* (2024), https://travel.state.gov/content/dam/visas/Statistics/AnnualReports/FY2024AnnualReport/Table%20XVB.pdf. .......... 7

U.S. Dep't of State, *Visas for Diplomats and Foreign Government Officials*, https://travel.state.gov/content/travel/en/us-visas/other-visa-categories/visas-diplomats.html (last visited Sept. 28, 2026). ........ 7

U.S. Embassy in Chile, *Terrorist Designations of International Cartels* (Feb. 20, 2025), https://cl.usembassy.gov/terrorist-designations-of-international-cartels. ........ 8

Last year, the United States District Court for the District of New Hampshire provisionally certified a class of all the children subject to Executive Order No. 14,160 entitled "Protecting the Meaning and Value of American Citizenship" ("EO1"), and preliminarily enjoined the enforcement of EO1 against the class. *See Barbara v. Trump*, 790 F. Supp. 3d 80 (D.N.H. July 10, 2025). After the Supreme Court affirmed that injunction, *Trump v. Barbara*, 146 S. Ct. 2438 (2026), the President has tried again, issuing a new Executive Order again purporting to strip birthright citizenship. *See* Exec. Order No. 14,418, *Continuing to Protect the Meaning and Value of American Citizenship*, 91 Fed. Reg. 51,991 (2026) ("EO2"). This Court should certify a new class of those born in the United States and subject to EO2, and preliminarily enjoin its enforcement.

The proposed class satisfies the requirements of numerosity, commonality, typicality, and adequacy in Rule 23(a). The proposed class includes numerous individuals and their parents, with many more to be born in coming months, which is sufficient to satisfy numerosity. The class raises common legal questions that will generate common answers, including whether Defendants' attempt to create new exceptions to birthright citizenship violates the Citizenship Clause of the Fourteenth Amendment, 8 U.S.C. § 1401 *et seq.*, and the Administrative Procedure Act ("APA"). The class also raises common factual issues because proposed class representatives and class members are subject to the same Executive Order purporting to deny them or their children U.S. citizenship. Proposed class representatives' constitutional and statutory claims are typical of those whom they seek to represent—that is, other individuals who are denied citizenship under EO2 and their parents. And the proposed class representatives are also adequately represented by a team of attorneys with significant experience in immigrants' rights issues and class action cases—including as class counsel in *Barbara* itself. Plaintiffs' proposed class likewise satisfies Rule

23(b)(2) because Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Accordingly, this Court should grant class certification, appoint proposed class representatives as Class Representatives, and appoint their counsel as Class Counsel. Defendants have indicated that they oppose the relief sought.

## I. PROPOSED CLASS DEFINITION.

All persons, and the parents (including expectant parents) of those persons:

(1) who are born in the United States as defined in 8 U.S.C. § 1101(a)(38);
(2) who are not born to a foreign diplomatic officer accredited to the United States;
(3) for whom neither parent is a U.S. Citizen; and
(4) for whom either parent is or will be categorized by the government as falling within §§ 2(a)-(c) of Exec. Order No. 14,418, *Continuing to Protect the Meaning and Value of American Citizenship*, 91 Fed. Reg. 51,991 (2026).

## II. PROPOSED CLASS REPRESENTATIVES.

### 1. Clara and Nathan.

Plaintiff "Clara" is a citizen of France. Decl. of Clara ¶ 2, ECF No. 3-1. She resides in Washington, DC. *Id.* She has lived in the U.S. for over ten years, and has established strong ties to the community. *See id.* ¶ 4. She first entered the United States on a student visa, but she is now on a G-4 visa. *Id.* Clara gave birth to her child, "Nathan," in Washington, DC in August 2026, after August 6, 2026. *Id.* ¶¶ 3, 6. Neither Clara nor her husband, Nathan's father, is a U.S. citizen. *Id.* ¶ 7. Both Clara and her husband work for international organizations that possess international-organization immunity. *Id.* Both of their employers are listed in 8 C.F.R. § 316.20(c). *Id.* Clara fears for Nathan's future. *Id.* ¶ 8. She worries that he will not have access to the same education and opportunities that she had in the United States. *Id.* ¶ 10.

**2. Edward.**

Plaintiff "Edward" is a citizen of Australia. Decl. of Edward ¶ 2, ECF No. 3-3. Edward resides in Australia with his wife, a cardiologist with whom he operates cardiology clinics in Australia, and his older daughter, a U.S. citizen born via surrogacy in the United States in 2021. *Id.* ¶¶ 2-4, 11-15, 30-33. He and his wife are expecting their second child through surrogacy in October 2026 in the United States. *Id.* ¶¶ 5, 16. Edward and his wife turned to surrogacy to fulfill their hopes of having a family because his wife cannot carry a child, for medical reasons. *Id.* ¶ 6. They chose the United States for surrogacy because compensated surrogacy is illegal in Australia, and because the United States provided an arrangement that was lawful, supervised by a court, and provided the best legal protections and resources for the gestational carrier. *Id.* ¶¶ 7-11. Edward and his wife are not U.S. citizens. *Id.* ¶ 21. They engaged in a commercial transaction with a surrogate present in the United States to give birth. *Id.* ¶¶ 16, 21.

**3. Patricia.**

Plaintiff "Patricia" is a citizen of a country in western Europe. Decl. of Patricia ¶ 2, ECF No. 3-2. She resides with her husband in the United States. *Id.* They have lived in the U.S. for over six years, and they have established strong ties to their community. *See id.* ¶ 3. Neither Patricia nor her husband is a U.S. citizen, and they are both on G-4 visas. *Id.* ¶¶ 2, 5. Patricia is pregnant with her second child. *Id.* ¶¶ 3, 6-7. Both Patricia and her husband work for international organizations that possess international-organization immunity. *Id.* ¶ 9. Both of their employers are listed in 8 C.F.R. § 316.20(c). *Id.* Patricia fears for her future child. *Id.* ¶ 11. She worries that her child will not have the same access to services as their peers, like scholarships and other opportunities. *Id.*

**ARGUMENT**

"By its terms, [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the

specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Class certification is appropriate where the proposed class satisfies the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and at least one of the categories of Rule 23(b). *See id.* Here, all the requisite elements of Rule 23 have been met.

## I. THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(a).

### A. The proposed class satisfies the numerosity requirement.

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability of joinder means only that it is difficult or inconvenient to join all class members, not that it is impossible to do so." *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015) (quoting *Bond v. Fleet Bank*, No. 1-177, 2002 WL 31500393, at *4 (D.R.I. Oct. 10, 2002)). "Plaintiffs need not prove exactly how many people fall within the class to merit certification." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 180 (D.D.C. 2015). "Absent unique circumstances, 'numerosity is satisfied when a proposed class has at least 40 members.'" *Coleman ex rel. Bunn*, 306 F.R.D. at 76 (quoting *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 196 (D.D.C. 2013)). Here, there can be no question that the class far exceeds forty individuals.

1. As an initial matter, the class tracks EO2, and EO2 is not by its terms limited to persons born as of a certain date. EO1, by contrast, specified that it "'shall apply only to persons who are born within the United States after 30 days from the date of this order,' that is, babies born after February 19, 2025." *CASA, Inc. v. Trump*, No. 25-cv-201, 2026 WL 2592706, at *9 (D. Md. Sept. 2, 2026) (quoting EO1 § 2(b)). But EO2 "says nothing like that"; "[n]owhere in the order does it indicate it does not apply to children already born." *Id.* A retroactive application of EO2 would sweep up numerous individuals who have lived their entire lives as citizens, easily satisfying

numerosity.

In their various agency documents issued after EO2, Defendants have asserted that EO2 applies only prospectively. *See* Complaint ¶¶ 48-60 (collecting documents). None of these documents attempt to justify this assertion or explain the glaring difference in this regard between EO1 and EO2. *See id.*; *CASA*, 2026 WL 2592706, at *9 ("Clearly, the President knows how to specify that an Executive Order on birthright citizenship applies only to children not yet born," so "[t]he only fair reading of the plain language of the 2026 Executive Order is that it applies to any child who falls within any category in Section 2 of the order[.]"). And, even assuming their assertion that EO2 applies only "prospectively" is correct, Defendants do not explain what they mean by that assertion—whether they mean a person must be born as of a certain date (and if so, what date and why), or whether the EO will simply not be *enforced* until a certain date (and if so, what date and why).[1]

2. Regardless, even assuming EO2 could be read to strip only the citizenship of babies

[1] DHS's Interim Final Rule states that the "*[t]he IFR* applies prospectively to children born in the United States on or after the effective date of the IFR[.]" *Registration of Lawful Permanent Residence for Children Born to Foreign Government Employees in the United States* *7, DHS Doc. No. USCIS-2026-0496 (Sept. 9, 2026) (to be codified at 8 C.F.R. pts. 101, 264), https://public-inspection.federalregister.gov/2026-18345.pdf ("IFR") (emphasis added). But whether the *regulation* is prospective, and as of what date, does not bear on which set of people from whom *EO2* purports to strip citizenship. *See id.* at *7 ("Children born in the United States before the effective date of this IFR are not subject to the *requirements of this IFR*.") (emphasis added). And the IFR is clear that birthright citizenship is stripped by EO2, independently of the IFR. *See id.* at *15 (because under EO2 "children born to foreign government employees who do not have a U.S. citizen parent are not U.S. citizens[,]" DHS "is aiming to put in place a procedure for children born on or after the effective date of this rule to have the ability to voluntarily register as lawful permanent residents as soon as possible in order to ensure that they have a lawful status in the United States"); *id.* at *14 ("In the absence of a rule governing the status of these children, these children may . . . be subject to removal from the United States" because of EO2); *id.* at *10 (asserting that regulatory changes were needed because "absent the changes made by this IFR, a child born in the United States to certain foreign government employees who lacks birthright citizenship [i.e., because of EO2] would not have previously been eligible to register as a lawful permanent resident").

born after its issuance (or after some other date or dates) who fall into its categories, numerosity is still easily satisfied.

Take, for example, the children of individuals employed by a foreign country or international organization with diplomatic immunity. EO2 § 2(b). As Defendants note, "the United States hosts more than 124,000 foreign mission members and dependents." IFR at *18.[2] While that figure includes foreign ministers who are excluded from the class, the U.S. government issued 96,693 "A2" visas in 2024 alone.[3] Those visas are issued to certain foreign government employees other than heads of state, ambassadors, and government ministers.[4] Moreover, noncitizens who are already here in the United States, for example as lawful permanent residents, may obtain employment at foreign missions or international organizations. In other words, many tens of thousands of foreign government employees without full diplomatic immunity are in the United States at any given time.

Approximately "3.9% of women of reproductive age" are pregnant at any given time. *See* Penelope Strid et al., *A New Tool for Estimating the Number of Pregnant People in the United*

---

[2] Approximately 185 foreign countries have missions to the United States. National Capital Planning Commission, *Embassies and Foreign Missions*, https://perma.cc/V32C-3EBV (last visited Sept. 30, 2026). And just one of those countries, Mexico, is estimated to employ some 400 consular workers in the United States. Isaías Alvarado, *Around 400 Employees of Mexican Consulates in the United States Face the Risk of Losing their Visas and Becoming Undocumented*, El País (Aug. 6, 2026), https://perma.cc/G5E3-RYBP. Likewise, some 59 international organizations have been designated as entitled to immunity under the International Organizations Immunities Act, 22 U.S.C. § 288, *et seq.* Just one of those organizations, the United Nations, employs some 15,890 people in New York alone. Stephanie Fillion, *The Big Picture Benefits of a UN Headquarters in New York*, Lowy Institute (Sept. 14, 2025), https://perma.cc/JL9Q-DDN8.

[3] U.S. Dep't of State, *Table XV(B): Nonimmigrant Visas Issued by Classification (Including Border Crossing Cards), Fiscal Years 2020-2024*, in *Report of the Visa Office 2024* (2024), https://travel.state.gov/content/dam/visas/Statistics/AnnualReports/FY2024AnnualReport/Table%20XVB.pdf.

[4] U.S. Dep't of State, *Visas for Diplomats and Foreign Government Officials*, https://travel.state.gov/content/travel/en/us-visas/other-visa-categories/visas-diplomats.html (last visited Sept. 28, 2026).

*States*, 145 Obstetrics & Gynecology e11, e11-e13 (Jan. 2025). Even a very conservative estimate of 10,000 foreign government employees who are women of reproductive age or their partners in the United States would yield an estimated 390 pregnant at any given time. For many if not most of those, neither parent will be a U.S. citizen. That is enough to satisfy numerosity.

The same is true of children of noncitizens "engaged in a commercial transaction" such as compensated surrogacy in the United States. EO2 § 2(c). In 2020, some 4,713 intended parents who are not U.S. residents utilized gestational surrogates in the United States.[5] This represented almost 32% of such surrogacies. *Id.* A third of all surrogacy births nationwide would doubtless satisfy numerosity. *See, e.g.*, Katlyn Ma, *State Lawmakers to Explore Banning Foreign Nationals from Using Texas Surrogates*, Tex. Trib. (July 7, 2026), https://perma.cc/XW5Z-FHGF (Texas Department of State Health Services indicating that "in 2025 there were 657 surrogacy births in total in Texas").

Finally, there can be little doubt that numerous children of individuals the administration deems "alien enem[ies]" are born each year. EO2 § 2(a). This provision of EO2 purports to strip citizenship at least from children whose parents belong to a designated Foreign Terrorist Organization, *see* 8 U.S.C. § 1189, or are deemed Specially Designated Global Terrorists, *see* 50 U.S.C. § 1701 *et seq.*; Exec. Order 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001)—designations which, together, include at least *one thousand* entities.[6]

The class includes not only children of bona fide members of these organizations, but also

---

[5] Alexandra Herweck et al., *International Gestational Surrogacy in the United States, 2014–2020*, 121 Fertility & Sterility 622, 622 (2024), https://perma.cc/XK62-ABEY.

[6] *See* U.S. Dep't of State, *Foreign Terrorist Organizations*, https://www.state.gov/foreign-terrorist-organizations/ (last visited Sept. 28, 2026) (100 organizations); U.S. Dep't of State, *Executive Order 13224*, https://www.state.gov/executive-order-13224 (last visited Sept. 28, 2026) (436 organizations); Off. of Foreign Assets Control, U.S. Dep't of the Treasury, *Sanctions List Search*, https://sanctionssearch.ofac.treas.gov (last visited Sept. 28, 2026) (search for all SDGTs "return[s] too many results," and SDGTs in China, Mexico, Pakistan, and Syria alone total 603).

those categorized by the government as members, underscoring numerosity. In the past year, the current Administration has "hastily and without credible evidence attempt[ed] to remove people from the United States because of purported affiliations with groups deemed alien enemies." *CASA*, 2026 WL 2592706, at *10 (collecting examples). Moreover, it has claimed broad, unfettered discretion to deem individuals or entities "alien enemies." *See, e.g.*, Application to Vacate 18-19, 32, *Trump v. J.G.G.*, No. 24A931 (Sup. Ct. Mar. 28, 2025). Even before then, immigration authorities have long relied on tenuous evidence to allege membership in gangs (some of which, like MS-13, are designated as terrorist organizations).[7] In *Diaz Ortiz v. Garland*, for example, the First Circuit found "[f]laws in [a Gang Assessment Database], including its reliance on an erratic point system built on unsubstantiated inferences," noting a "shockingly wide-ranging" set of activities or characteristics could lead someone to be labeled as a gang member, and that the petitioner had been labeled a gang member due to "quintessential teenage behavior—hanging out with friends and classmates." 23 F.4th 1, 3, 17, 19 (1st Cir. 2022) (en banc).

Section 2(a)'s text also likely blocks citizenship from numerous children of individuals fleeing persecution. Individuals who flee organizations like those included as Foreign Terrorist Organizations or Specially Designated Global Terrorists—either because they are disavowing membership, or were formerly partnered with someone who remains a member—may arrive to the United States and seek asylum on the basis of their "membership in a particular social group" or "political opinion." *See* 8 U.S.C. § 1101(a)(42); *see also, e.g.*, *Oliva v. Lynch*, 807 F.3d 53, 59-60 (4th Cir. 2015) (remanding asylum application filed by a former member of MS-13 where "MS-13 extorted [the petitioner] on account of his leaving the gang"); *Benitez Ramos v. Holder*, 589 F.3d 426, 428-29 (7th Cir. 2009) (granting petition for review filed by a former member of MS-

[7] *See* U.S. Embassy in Chile, *Terrorist Designations of International Cartels* (Feb. 20, 2025), https://cl.usembassy.gov/terrorist-designations-of-international-cartels.

13 who had refused to re-join). In recent years, the United States has received some 400,000 affirmative asylum applications annually, *see* Off. of Homeland Sec. Statistics, *Asylees: 2024*, https://perma.cc/B8CU-RCJU (last updated Aug. 10, 2026), and persecution on the basis of political opinion or membership in a particular social group accounted for 80 percent of the total number of asylum grants between 2020 and 2023, Andorra Bruno, *What is Affirmative Asylum?* 10 (CRS Rep. No. R48249) (Oct. 24, 2024), https://perma.cc/8MQ7-9D5L. Considering the scale of that asylum-seeking population, many children are likely born annually in the United States with at least one parent who would be deemed members of such gangs.

Further, more children will populate the class as they are born, and "classes including future claimants generally meet the numerosity requirement due to the 'impracticality of counting such class members, much less joining them,'" *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) (quoting 1 Rubenstein, *Newberg on Class Actions* § 3:15 (5th ed. 2012)).

**B. The proposed class representatives present issues of fact and law in common with the class.**

Rule 23(a)(2) requires that "questions of law or fact" be "common to the class." "Because the commonality requirement may be satisfied by a single common issue, courts have noted it is 'often easily met.'" *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007) (quoting *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 259 (D.D.C. 2002)). All that is required is that the "claims must depend upon a common contention" that "is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Accordingly, this Court has recognized that the commonality requirement is a "low bar." *See, e.g.*, *Harris v. Koenig*, 271 F.R.D. 383, 389 (D.D.C. 2010) (citation modified).

The claims of the proposed class members raise common legal and factual questions. All class members raise the same legal questions: whether class members' citizenship is guaranteed

by the Constitution, § 1401, *Trump v. Barbara*, and *United States v. Wong Kim Ark*, 169 U.S. 649 (1898); and whether EO2 violates that guarantee by purporting to create new exceptions to this rule that deny class members their citizenship. The class members also share a common core of facts: each of these families have or will have a child whose citizenship is denied and threatened by the Order. As a result, if the Order is left in place, those children will face numerous obstacles to life in the United States, including stigma and potential statelessness; loss of their right to vote, serve on federal juries and in many elected offices, and work in various federal jobs; ineligibility for various federal programs; and potential arrest, detention, and deportation to countries they may have never even seen. Proposed class representatives and proposed class members thus will "have suffered the same injury"—denial of citizenship, and its concomitant rights and duties, by the Executive Order. *Dukes*, 564 U.S. at 350. And these common questions are capable of class-wide resolution. A determination that Defendants' conduct is unconstitutional or otherwise unlawful "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

**C. The class representatives' claims are typical of those of the class.**

Where commonality looks to the relationship among class members generally, typicality under Rule 23(a)(3) "concerns the relationship between the representative's individual claims and the class's claims rather than the relatedness of the entire class's claims." *J.D.*, 925 F.3d at 1322. In practice, however, the analysis of typicality and commonality "tend to merge." *Id.* (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). To satisfy Rule 23(a)(3), "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Daskalea v. Wash. Humane Soc.*, 275 F.R.D 346, 357 (D.D.C. 2011) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

When "the injuries that the named plaintiffs allegedly suffered were caused by the exact same conduct as the alleged injury to the rest of the class," then "there is no doubt that the named

plaintiffs' claims are typical of those of the class as a whole." *Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 161 (D.D.C. 2014). "[T]ypicality is ordinarily met 'if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory.'" *J.D.*, 925 F.3d at 1322 (quoting 7A Wright & Miller's Federal Practice & Procedure § 1764). "In the end, the test for typicality is not demanding." *L.G.M.L. v. Noem*, 800 F. Supp. 3d 100, 119 (D.D.C. 2025) (citation modified).

Here, the Defendants' conduct and the resulting injuries to plaintiffs are the same across all cases. The proposed class representatives are members of the class and have suffered the same injury as the proposed class members, namely that the Defendants seek to strip them and their children of citizenship and the rights and duties that come with citizenship, and that injury involves the same conduct by the Defendants, namely enforcement of EO2. Any differences among class members have no bearing on whether a child should receive United States citizenship under the Fourteenth Amendment, *Trump v. Barbara*, 146 S. Ct. 2438, 2450-51 (2026), or under § 1401. Those differences thus do not defeat typicality.

Although the district court in *Barbara* narrowed the class Plaintiffs had proposed to a children-only class out of concern for "commonality and typicality issues," *see* 790 F. Supp. 3d at 91, Plaintiffs respectfully request that this Court certify a parents and children class in this instance. Each family shares the central, seminal harm from which all other harms flow: the denial of their child's constitutionally and statutorily guaranteed right to citizenship. Moreover, Defendants make clear that each parent in the class is now (in the government's view) under the obligation to register their U.S.-born child with federal authorities pursuant to 8 U.S.C. § 1302 *et seq.*[8] And

[8] *See* IFR at *11 (person stripped of citizenship under EO2 "must register as an alien when required

there can be no real question that these parents can invoke the constitutional and statutory rights of their newborn children. After all, "the relationship between parent and child is obviously close . . . [a]nd there are probably few individuals less able to protect their own interests than newborn children." *Lewis v. Thompson*, 252 F.3d 567, 585 (2d Cir. 2001) (holding noncitizen women had third-party standing to invoke the citizenship rights of their expected babies).[9]

### D. The proposed class representatives and class counsel can adequately represent the class.

Finally, the named plaintiffs and their counsel will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Two factors must be satisfied to fulfill this prerequisite: (1) "the class representative . . . must not have antagonistic or conflicting interests with the unnamed members of the class" and (2) "the class representative . . . must appear able to vigorously prosecute the interests of the class through qualified counsel." *Robertson v. District of Columbia*, 816 F. Supp. 3d 77, 103 (D.D.C. 2026) (quoting *J.D.*, 925 F.3d at 1312).

Here, there is no conflict—much less anything close to a conflict fundamental to the suit that would prevent a plaintiff from meeting the adequacy requirement. *Cf. Keepseagle v. Vilsack*, 102 F. Supp. 3d 205, 216-17 (D.D.C. 2015) (holding that not "any divergence of views or interests" defeats adequacy, and determining class representatives were adequate because their

---

to do so by" § 1302 *et seq.*); 8 U.S.C. § 1302(b) (parent or guardian has obligation to register minor under fourteen). Even apart from the obvious harm of choosing between conceding that one's U.S.-born child is an "alien" for purposes of registration and exposing oneself to criminal enforcement, *id.* § 1306(a) (failure to comply is a misdemeanor), Defendants note that registration itself imposes costs. They estimate the average time to register represents an opportunity cost of $122.43 for completing the form and $340.15 for completing biometrics. IFR at *19-20.

[9] *Lewis* rejected on the merits the plaintiffs' effort to challenge "prebirth injury" on equal protection grounds. 252 F.3d at 586. The Court distinguished such an impermissible prebirth claim from a challenge to harm that is "suffered only upon birth." *Id.* at 587. That is the case here. Even the expecting parents in the putative class allege harms that will arise only when their child is born; however, that harm can, of course, be imminent (and thus subject to present litigation and injunction) before birth.

underlying legal claims were substantively "identical"). The proposed class representatives have alleged the same injuries, arising from the same Executive Order, and they seek the same injunctive and declaratory relief, which will apply equally to the benefit of all class members.

And proposed class counsel, lawyers from the ACLU Immigrants' Rights Project; the ACLUs of New Hampshire, Maine, Massachusetts, and the District of Columbia; the Asian Law Caucus; the NAACP Legal Defense and Educational Fund; and the Democracy Defenders Fund have extensive experience litigating class action lawsuits and other complex cases in federal court, including the *Barbara* litigation itself. *See* Exs. A-H. Accordingly, the Court should appoint them as class counsel.

## II. THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(b)(2).

Finally, in addition to meeting the four requirements of Rule 23(a), the plaintiffs must show that "certification of the proposed class" is "appropriate under at least one of the three categories enumerated in Rule 23(b)." *Daskalea*, 275 F.R.D. at 355. Here, the relevant category is Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"

The Plaintiffs seek "a single injunction or declaratory judgment [that] would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. A declaration and injunction that Defendants may not deny or abridge their (and their children's) birthright citizenship. And because every member of the class is entitled to relief from this unconstitutional and otherwise unlawful Executive Order, an appropriate injunction or declaration will provide relief on a classwide basis. "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or

declared unlawful only as to all of the class members or as to none of them." *Id.* at 360 (citation modified).

This is a quintessential Rule 23(b)(2) class: "Rule 23(b)(2) exists so that parties and courts, especially in civil rights cases like this, can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief." *D.L. v. District of Columbia*, 860 F.3d 713, 726 (D.C. Cir. 2017); *see also In re District of Columbia*, 792 F.3d 96, 102 (D.C. Cir. 2015) ("Rule 23(b)(2) was intended for civil rights cases.").

**CONCLUSION**

Plaintiffs respectfully request that the Court grant this Motion and enter an order certifying the proposed class under Rule 23(b)(2); appoint proposed class representatives as Class Representatives; and appoint their counsel from the ACLU Immigrants' Rights Project; the ACLUs of New Hampshire, Maine, Massachusetts, and the District of Columbia; the Asian Law Caucus; the NAACP Legal Defense and Educational Fund; and the Democracy Defenders Fund as Class Counsel.

Dated: October 9, 2026

Respectfully submitted,

*/s/ Cody Wofsy*
Cody Wofsy (D.D.C. Bar No. CA00103)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
cwofsy@aclu.org

Grace Choi*
Omar Jadwat*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
gchoi@aclu.org
ojadwat@aclu.org

Lucia Goin (DC Bar No. 1739389)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT
915 15th Street NW
Washington, DC 20005
T: (332) 529-3732
lgoin@aclu.org

Norm Eisen (DC Bar No. 435051)
Tianna Mays (DC Bar No. 90005882)
Taryn Wilgus Null (DC Bar No. 985724)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE, #15180
Washington, DC 20003
T: (202) 594-9958
norman@democracydefenders.org
tianna@democracydefenders.org
taryn@democracydefenders.org

Kimberly Wei Leung*
Winifred Kao*
ASIAN LAW CAUCUS
55 Columbus Ave
San Francisco, CA 94111
T: (415) 896-1701

SangYeob Kim*
Gilles R. Bissonnette*
Henry R. Klementowicz*
Chelsea Eddy*
Caroline Meade*
Maria Savarese*
AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE
18 Low Avenue
Concord, NH 03301
T: (603) 333-2081
sangyeob@aclu-nh.org
gilles@aclu-nh.org
henry@aclu-nh.org
chelsea@aclu-nh.org
caroline@aclu-nh.org
maria@aclu-nh.org

Elizabeth Caldwell*
Brittany Carter*
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
40 Rector St., FL 5, New York, NY 10006
T: (212) 217-1690
bcaldwell@naacpldf.org
bcarter@naacpldf.org

Morgan Humphrey* (DC Bar No. 90035952)
Mide Odunsi* (DC Bar No. 90034019)
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
T: (202) 249-2193
mhumphrey@naacpldf.org
modunsi@naacpldf.org

Carol Garvan*
Zachary L. Heiden*
Max Brooks*
AMERICAN CIVIL LIBERTIES UNION OF MAINE FOUNDATION
P.O. Box 7860
Portland, ME 04112
T: (207) 619-8687

cgarvan@aclumaine.org
heiden@aclumaine.org
mbrooks@aclumaine.org

Adriana Lafaille*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza Suite 850
Boston, MA 02108
T: (617) 482-3170
alafaille@aclum.org

kimberlyl@asianlawcaucus.org
winifredk@asianlawcaucus.org

Arthur B. Spitzer (DC Bar No. 235960)
Scott Michelman (DC Bar No. 1006945)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF COLUMBIA
529 14th Street NW, Suite 420
Washington, DC 20045
T: (202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org

*Counsel for Plaintiffs*
**Pro hac vice motion forthcoming*