**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| "NATHAN," *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, President of the United States, in his official capacity, *et al.*,<br><br>*Defendants*. | Case No. 1:26-CV-3377-CC |

**DEFENDANTS' COMBINED MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND MOTION FOR CLASS CERTIFICATION**

In order to comply with the Supreme Court's decision in *Trump v. Barbara*, 609 U.S. ---, 146 S. Ct. 2450 (2026) while still protecting the importance of American citizenship, the President issued Executive Order 14,418, "Continuing to Protect the Meaning and Value of American Citizenship." 91 Fed. Reg. 51,991 (Aug. 62026) ("2026 Executive Order"). Unlike the previous Executive Order, the President's 2026 Executive Order is not based on whether the parents were unlawfully or temporarily present at the time of birth. Rather, it is based on much narrower categories, directing agencies not to treat as citizens (1) children of "alien enem[ies]," (2) children of "foreign government employee[s]," (3) children of parents who had engaged in "commercial" or "fraudulent" transactions to obtain birthright citizenship for the given child, and (4) children born in territories or territorial waters of the United States where citizenship is not conferred by Federal statute. *Id.*

Plaintiffs have moved for a preliminary injunction and to certify a class. This is not Plaintiffs' first bite at this apple. Counsel here first tried to add these Plaintiffs in *Barbara*. In their initial challenge to the 2026 Executive Order, rather than amend their complaint, they sought to clarify or modify the existing injunction to cover the distinct 2026 Executive Order. *See Barbara v. Trump*, 1:25-

cv-244, ECF 80 at 7-14 (D.N.H. Aug. 11, 2026) (motion to clarify or modify injunction). The district court had not had the opportunity to rule on that motion before Plaintiffs superseded that motion with a new motion for injunction and class. *Id.* ECF Nos. 91 (Sep. 9, 2026) (new motion for class certification with Edward, Clara, Nathan, and Patricia); 92 at 4-12 (Sep. 9, 2026) (new motion for preliminary injunction). Even then, the court made clear that the suits were completely distinct and encouraged the plaintiffs to abandon their motions. *See Id.* Order September 10, 2026; *id.* ECF No. 96 (Sep. 23, 2026) (notice of withdrawal for all motions). As a result, Plaintiffs now petition this Court months after the 2026 Executive Order was issued and another court enjoined its implementation as to the same class in *Barbara*. *See CASA, Inc. v. Trump*, 838 F. Supp. 3d 498, 517 (D. Md. 2026). There is thus no basis or need for this Court to grant Plaintiffs extraordinary relief. Third time is not the charm. This Court should deny both requests.

To start, Plaintiffs are unlikely to succeed on the merits. Two of their named Plaintiffs lack standing altogether because the 2026 Executive Order is prospective and the child at issue was born before the implementation of the Order. While the other named Plaintiffs may have standing to challenge the foreign government employees and birth tourism exceptions, they lack any Plaintiff who is likely to be subjected to the alien enemy exception. Since the 2026 Executive Order is severable, Plaintiffs wholly lack standing to challenge that exception. In addition, they lack adequate class representatives to represent a massive proposed class challenging the entire 2026 Executive Order. Nor are the issues common. And Plaintiffs have failed to prove numerosity. Importantly, the Rule 23(b)(2) class Plaintiffs seek has significant overlap with the Rule 23(b)(2) class in *CASA*. The binding nature of Rule 23(b)(2) precludes overlapping classes bringing similar claims and seeking similar relief from getting multiple bites at the apple.

As for the merits, Plaintiffs fare no better. Plaintiffs in their preliminary injunction motion cite no controlling authority for the notion that the Fourteenth Amendment limits exceptions to

birthright citizenship to a closed set. Even if that were the case, the exceptions described in *Barbara* and *United States v. Wong Kim Ark*, 169 U.S. 649 (1898), are capaciously worded and defined, and easily encompass the 2026 Executive Order's categories. And at a minimum Plaintiffs cannot facially challenge the 2026 Executive Order, as at least part of the exceptions are lawful. Plaintiffs' motion also falters on the remaining injunctive factors. Plaintiffs cannot demonstrate irreparable harm, especially given the substantial delay in bringing this motion. And the public interest is not served by freezing the Executive's efforts in that regard. Accordingly, this Court should deny Plaintiffs' Motions for a Classwide Preliminary Injunction and Class Certification.

## BACKGROUND

On June 30, 2026, the Supreme Court decided *Trump v. Barbara*, holding that "children born of parents unlawfully or temporarily present in the United States" are "subject to the jurisdiction of the United States" and are thus "citizens at birth." 146 S. Ct. at 2450. All in that case agreed that "[t]he Citizenship Clause mirrored the common law's criteria for citizenship." *Id.* at 2449. And under the common law, birthright citizenship depended on "natural 'allegiance' (and thus 'obedience') to the Nation." *Id.* (citation omitted). Where the Supreme Court parted ways from Defendants was on its "definition of 'allegiance.'" *Id.* at 2453. Whereas Defendants argued that allegiance "turn[s] on domicile," *id.*, the Supreme Court viewed allegiance as depending on whether the child was "born under the protection of the United States," provided that "no extraterritorial fiction applied," *id.* at 2449 (citation omitted). In reaching that holding, the Supreme Court approved of its earlier decision in *Wong Kim Ark*, which articulated a general rule of birthright citizenship, but excluded "children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory." 169 U.S. at 693. The Supreme Court accordingly upheld the *Barbara* court's preliminary injunction against enforcing the 2025 Executive Order, which was untethered to any of those categories. *Barbara*, 146 S. Ct. at 2456, 2458.

In light of the Supreme Court's decision, on August 6, 2026, the President signed a new Executive Order, "Continuing to Protect the Meaning and Value of American Citizenship." 91 Fed. Reg. at 51,991. The 2026 Executive Order did not depend on a domicile theory of citizenship. Rather, it applied the recent opinion in *Barbara*, explaining that under *Barbara* birthright citizenship extends to "children born to parents in the United States 'for whom no extraterritorial fiction applie[s].'" *Id.* (quoting *Barbara*, 146 S. Ct. at 2449). In keeping with *Barbara*, the Executive Order "identifies . . . certain categories of children of aliens who do not fall within the rule of birthright citizenship as announced by the Supreme Court." *Id.*

The 2026 Executive Order lays out four categories. *First,* it excludes children whose parent "is an alien enemy," which is "defined to include any member of a designated Foreign Terrorist Organization" or "Specially Designated Global Terrorist," among other things. 91 Fed. Reg. at 51,991 § 2(a). Second, it excludes children whose parent "is a foreign government employee," which includes ambassadors, embassy or consulate employees who are nationals of the foreign country, persons employed by a foreign government in an official capacity, and persons employed by an international organization that possess international-organization immunity. *Id.* § 2(b)(i)-(iv). Third, the Executive Order excludes children whose parent "engaged in a commercial transaction to purchase or access birthright citizenship for the person, or engaged in fraudulent activity to obtain citizenship." *Id.* § 2(c). And fourth, the Executive Order excludes children "born in a territory or territorial waters of the United States where citizenship is not conferred by Federal statute." *Id.* § (2)(d). The 2026 Executive Order's categories are justified either as offshoots of the same historical and common-law inquiry that *Barbara* itself used, or as falling within the broad enumerated exceptions *Barbara* and *Wong Kim Ark* discussed. In any event, the President has expressly stated his preference for severability should any exception be held invalid. *Id.* § 4 ("If any provision of this order, or the application of any provision to any individual circumstance, is held to be invalid, the remainder of this order and the application

of its other provisions to any other individuals or circumstances shall not be affected thereby."). When the 2026 Executive Order was signed, it directed agencies to "issue public guidance within 30 days of the date of this order regarding this order's implementation with respect to their operations and activities." *Id.* § 3(b). Each agency's guidance made clear that "[b]ecause the [2026 Executive Order] is prospective only, this guidance is prospective only and will become effective upon publication subject to any legal obligations."[1] The same goes for the interim final rule ("IFR") published by DHS, which explains that it "applies prospectively to children born in the United States on or after the effective date of the IFR," and that "[c]hildren born in the United States before the effective date of this IFR are not subject to the requirements of this IFR." Department of Homeland Security, *Interim Final Rule: Registration of Lawful Permanent Residence for Children Born to Foreign Government Employees in the United States* (Sep. 9, 2026), https://perma.cc/LQZ2-DLLS.

The guidance, largely issued on September 4, 2026, also clarifies the 2026 Executive Order's excepted categories. As to foreign government and international organization employees, the

---

[1] *See, e.g.*, Social Security Administration, *Guidance on Continuing to Protect the Meaning and Value of American Citizenship (Executive Order 14418) for the Social Security Administration*, https://perma.cc/DU9M-U4BV; Department of State, *Guidance on Executive Order 14418: Continuing to Protect the Meaning and Value of American Citizenship*, https://perma.cc/A67M-XTMF; Centers for Medicare & Medicaid Services, *Guidance on Continuing to Protect the Meaning and Value of American Citizenship (Executive Order 14418) for Medicaid and Children's Health Insurance Program (CHIP) Verification Requirements under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 and other federal statutes* (Sep. 4, 2026), https://perma.cc/NG9Z-CS7P; Department of Agriculture, *Guidance on Continuing to Protect the Meaning and Value of American Citizenship (Executive Order 14418) for Verification Requirements under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996* (Sep. 4, 2026), https://perma.cc/ZG63-H6DN; Administration for Children and Families, *Guidance on Continuing to Protect the Meaning and Value of American Citizenship (Executive Order 14418)*, https://perma.cc/K22M-PWRR ; Department of Housing and Urban Development, *Guidance on Continuing to Protect the Meaning and Value of American Citizenship (Executive Order 14418) for Verification Requirements under Section 214 of the Housing and Community Development Act of 1980 and Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996* (Sep. 4, 2026), https://perma.cc/A3Z2-LD7H; U.S. Citizenship and Immigration Services, *Registration of Lawful Permanent Residence for Children Born to Foreign Government Employees in the United States* (Sep. 4, 2026), https://perma.cc/A3Z2-LD7H; USCIS, Policy Manual, *Chapter 3 – Children Born in the United States to Foreign Government Employees,* ttps://perma.cc/SJ8M-WAVN; USCIS, Policy Manual, *Chapter 2 – Born in the United States and Becoming a U.S. Naturalized Citizen,* https://perma.cc/ASS6-YA8B.

guidance sets out a detailed list of who falls within or outside that category. For instance, "[p]ersonal employees or attendants of foreign government or international organization officials" fall outside of the excepted category, as do "[e]mployees of international organizations beyond those international organizations designated by executive order as enjoying immunity in the United States under the International Organizations Immunities Act." *Id.* As to alien enemies, the guidance explained that membership in those categories "will be assessed based on relevant government records and other indicators." *See supra,* n. 2. And, regarding federally funded benefits, the agencies provided detailed guidance on what documents must be produced to prove eligibility, including an eligibility attestation form. *See supra*, n 2.

Shortly after the Executive Order was signed, and as relevant here, the plaintiffs in *Barbara* reached out to Defendants to discuss the implications of the 2026 Executive Order in that case. The *Barbara* plaintiffs filed various motions attempting to challenge the 2026 Executive Order. They began with a Motion to Clarify the Preliminary Injunction or, in the alternative, to Modify, or to Issue New Preliminary Injunction. *Barbara*, No. 1:25-cv-244, ECF No. 80. Getting nowhere with that request to challenge a distinct Executive Order, Plaintiffs pivoted to filing an Assented-to Motion for Leave to File a Supplemental Complaint; a Motion for Class Certification and Appointment of Class Counsel; and a Motion for Classwide Preliminary Injunction; Request for Expedited Treatment. *Barbara*, No. 1:25-cv-244, ECF Nos. 90-92. It was in *Barbara* that Plaintiffs in this case first appeared to challenge the 2026 Executive Order. *Id.* ECF No. 90. Ultimately, the *Barbara* court "indicated that in its view the supplemental complaint effectively represented a new case and should be filed as such[]" and Plaintiffs withdrew their pending motions and stated their intention to file elsewhere. *See* Pls.' Notice to Court Regarding Pending Motions, *id.*, ECF No. 96. In the meantime, the district court in *CASA* preliminary enjoined the implementation of the 2026 Executive Order as to a class identical to the one in *Barbara*: children born in the United States after February 19, 2025, (1) whose mother was

unlawfully present in the United States and whose father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) whose mother's presence in the United States at the time of said person's birth was lawful but temporary and whose father was not a United States citizen or lawful permanent resident at the time of said person's birth. 838 F. Supp. 3d at 517.

On September 28, 2026, Plaintiffs filed their complaint in this Court. Besides claims and requested relief as to the 2026 Executive Order, Plaintiffs included allegations for class representatives of a new proposed class.

- "Clara," a citizen of France, gave birth to her child, "Nathan," in August 2026. Compl. ¶ 14, ECF No. 1. She is employed by an international organization "that possess[es] international-organization immunity." *Id.*

- "Edward," an Australian cardiologist, expects a second child through surrogacy in October 2026. *Id.* ¶ 15. He "engaged in a commercial transaction with a surrogate present in the United States." *Id.*

- "Patricia" is a European citizen who expects a child in April 2027. *Id.* ¶ 16. She is employed by an international organization "that possess[es] international-organization immunity." *Id.*

Those class representatives were the same ones proposed in *Barbara*, No. 1:25-cv-244, ECF Nos. 90-92. Rather than defining to which categories these proposed representatives apply, Plaintiffs' proposed class in broad strokes merely copies the 2026 Executive Order, comprising persons born in the United States "who are not born to a foreign diplomatic officer accredited to the United States," "for whom neither parent is a U.S. citizen," and "for whom either parent is or will be categorized by the government as falling within §§ 2(a)-(c) of [the 2026 Executive Order]." Compl. ¶ 62.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted). A district court should enter preliminary relief only "upon a clear showing that the [movant] is entitled to such relief." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). The moving party must demonstrate (1) that it is likely to

succeed on the merits of its claims; (2) that it is likely to suffer irreparable harm in the absence of injunctive relief; (3) that the balance of equities tips in its favor; and (4) that the proposed injunction is in the public interest. *Id.* at 20. Finally, when "the Government is the opposing party[,]" the assessment of "harm to the opposing party" and "the public interest" merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

Plaintiffs must at the minimum meet the prerequisites for the extraordinary relief they seek. They have not done so. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted). The D.C. Circuit has indicated that it reads *Winter* to "suggest if not hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'" *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J. concurring)).

Plaintiffs' motion fails across the board. They ask this Court to enjoin the majority of the 2026 Executive Order as to a class defined as all persons the 2026 Executive Order could possibly affect. But Plaintiffs do not have class representatives with standing to challenge all the provisions of the Executive Order. Nor is their request for class certification and classwide relief with those named Plaintiffs proper. In any event, Plaintiffs' claims fail on the merits. Contrary to Plaintiffs' repeated mantra, *Barbara* did not announce a "closed set" understanding of the Fourteenth Amendment. Even if it did, the 2026 Executive Order's categories (as elucidated by guidance) fall within that "closed set" and the common law that *Barbara* champions. Their motion falls well short of the high bar that a facial challenge like theirs must meet.

The remaining injunction factors cut against Plaintiffs. Plaintiffs cannot demonstrate irreparable harm, and the equities tip decisively in Defendants' favor.

## I. Plaintiffs Have No Likelihood of Success.

### A. Plaintiffs Lack Standing to Challenge Portions of the Executive Order.

The "'most important factor'" of the preliminary injunction analysis is likelihood of success on the merits. *Friends of the Earth U.S. v. Export-Import Bank of the U.S.*, 187 F.4th 616, 625 (D.C. Cir. 2026) (quoting *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014)). A movant's failure to show a likelihood of success on the merits is alone sufficient to defeat their motion for preliminary injunction. *Id.* (citing *Ark Dairy Coop. Ass'n v. Dep't. of Agric.*, 573 F.3d 815, 832 (D.C. Cir. 2009). Moreover, the "merits on which a plaintiff must show likelihood of success encompass both substantive theories and establishment of jurisdiction." *Id.* (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (citation modified)). Here, Plaintiffs have abdicated their burden by not even bothering to make any showing of standing. Indeed, in their Motion for a Preliminary Injunction, Plaintiffs do not even mention standing in the context of this case much less attempt to prove their named class members have standing. This is despite knowing standing will be a central issue based on the parallel litigation in *CASA*. Motion for Classwide Preliminary Injunction ("PI Mot.") at 3, ECF No. 12 (acknowledging this issue in *CASA* and simply concluding it does not apply here because "children at issue in this case were born or will be born after EO2's issuance"). That alone should doom their motion in its entirety.

In order to obtain a preliminary injunction, Plaintiffs must prove that they have standing. *See Murthy v. Missouri*, 603 U.S. 43, 50 (2024). Standing requires proof that Plaintiffs "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Standing "is not dispensed in gross"; rather, "a plaintiff must demonstrate standing for each claim he seeks to

press and for each form of relief that is sought," *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (quotation omitted), and "plaintiff's remedy must be 'limited to the inadequacy that produced his injury in fact,'" *Gill v. Whitford*, 585 U.S. 48, 66 (2018). Furthermore, where—as here—the challenged Order is severable, a plaintiff "must show injury, causation, and redressability with respect to each provision it challenges." *Advantage Media, LLC v. City of Eden Prairie*, 456 F.3d 793, 801 (8th Cir. 2006); *accord INS v. Chadha*, 462 U.S. 919, 931 (1983).

Those rules are not relaxed in the class-action context. There, the D.C. Circuit has explained that, for each claim, at least one named plaintiff must maintain a live individual dispute until class certification. *J.D. v. Azar*, 925 F.3d 1291, 1318 (D.C. Cir. 2019). And standing for each unnamed class member must ultimately be established before he can receive relief, injunctive or otherwise; "Article III does not give federal courts the power to order relief to *any* uninjured plaintiff, class action or not." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citation omitted).

Under these principles, Plaintiffs lack standing to seek at least some of their requested relief. At the preliminary injunction stage, a lack of Article III standing is grounds for denial of the motion, and can also justify outright dismissal of the suit. *See Munaf*, 553 U.S. at 691 ("Review of a preliminary injunction is not confined to the act of granting the injunction but extends as well to determining whether there is any insuperable objection, in point of jurisdiction or merits, to the maintenance of the bill, and, if so, to directing a final decree dismissing it." (citation modified)).

Plaintiffs seek to challenge virtually the entirety of the 2026 Executive Order on a classwide basis,[2] but have not identified Plaintiffs who will be impacted by each of the challenged provisions. Plaintiffs' complaint identifies four class representatives—"Clara," "Nathan," "Edward," and

[2] Plaintiffs do not seek to challenge Executive Order § 2(d), which applies to persons born "in a territory or territorial waters of the United States where citizenship is not conferred by Federal statute." PI Mot. at 17 n.3. This effectively concedes that the 2026 Executive Order's exceptions are severable.

"Patricia." Compl. ¶ 61. Of those four named Plaintiffs, "Clara" gave birth to "Nathan" after the Executive Order was issued, but before the guidance was issued. *Id.* ¶ 14. As the 2026 Executive Order and subsequent guidance makes clear, "Clara" and "Nathan" are therefore unaffected by the 2026 Executive Order and thus lack standing.

In conclusory manner, Plaintiffs allege the 2026 Executive Order should not be treated as prospective. But Plaintiffs do not grapple with the ordinary presumption against retroactivity that applies to legal texts, *cf. Landgraf v. Usi Film Prods.*, 511 U.S. 244, 265-66 (1994); *Sweet v. Sheahan*, 235 F.3d 80, 88 (2d Cir. 2000) (applying presumption to executive regulations), nor do they address the deference accorded to executive agency interpretations of executive orders, *Udall v. Tallman*, 380 U.S. 1, 4, 16-18 (1965). Plaintiffs would flip that presumption on its head, requiring a clear statement that the 2026 Executive Order is *prospective*. That is not how the law works. In all events, Plaintiffs cannot dispute that the 2026 Executive Order is only "[e]nforce[d]" by agency implementation and guidance. 2026 Executive Order § 3. And every relevant agency tasked with implementing the 2026 Executive Order has now issued public guidance and regulations explicitly saying that "the EO is prospective only," that the "guidance" therefore too "is prospective only," and that the guidance "will become effective upon publication subject to any legal obligations." *Supra* at n 2; *see Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 218 (4th Cir. 2020) ("State Police issued an 'FAQ' affirming that an HQL is not needed to fire a gun at a gun range" meant there was no threat of enforcement). As a result, no Plaintiff or class member whose child was born prior to the implementation of the Executive Order in September 2026 has standing.

"Clara" nonetheless claims that she is afraid her "son is in a legal limbo and vacuum." *See* Decl. of "Clara" ¶ 8, ECF No. 3-1 (filed with Motion for to Proceed Pseudonymously, not with the Motion for a Preliminary Injunction). Such fears are not just "highly speculative"—they are ruled out by the guidance. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). Because that guidance was

issued after "Nathan" was born, he has already benefited from citizenship. Clara has no evidence that Nathan has lost any citizenship benefits as a result of the Executive Order to disprove this point. Nor has "Clara" suggested that she plans to have more children. *See* Decl. of "Clara". Even if Clara did, "'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the same day will be"—are insufficient to support standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). "Clara" thus lacks standing to represent the class and challenge the 2026 Executive Order.

Next, Edward alleged injuries are speculative and depend on the actions of third parties: that Australian officials will not quickly issue his child a passport and that he will be removed by U.S. officials without his child, who would presumably be an Australian citizen. *Barbara*, ECF No. 91-2, at 4-7. This "speculation about the unfettered choices made by independent actors [including foreign nations] not before the courts" does not create Article III standing. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024) (citation omitted). His affidavit does not acknowledge or explain whether he has explored Australia's methods for time-sensitive temporary passports, or even allege that he has contacted the Australian embassy to discuss whether he would be able to bring his Australian citizen child home without a U.S. passport. An Australian citizen's challenges obtaining Australian travel documents to bring an Australian citizen child home to Australia do not create standing to sue the United States. At a minimum, they do not create standing to sue anyone other than the State Department, the agency that issues U.S. passports.

Edward's other alleged injuries are insufficiently concrete or imminent. An abstract assertion of concerns about "immigration enforcement," *Barbara*, ECF 91-2, ¶ 29, is speculative and makes little sense when his stated goal is for the U.S. government's help in leaving the country to return to Australia. And an abstract desire for his "daughter to be able to visit her surrogate one day, and to travel freely to the country of her birth," *Barbara*, ECF 91-2, ¶ 38, are the type of "'some day'

intentions—without any description of concrete plans" that do not establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). It is also not apparent why a normal visa would not suffice.

Of the purported class representatives, then, only "Patricia" can claim to have standing to challenge the 2026 Executive Order. But even she would only have standing to challenge Section 2(b)(iv) of the Order—that is, the subsection of a subsection dealing with "persons employed by an international organization that possess international-organization immunity." 2026 Executive Order § 2(b)(iv). The 2026 Executive Order is explicitly severable: "If any provision of this order, or the application of any provision to any individual circumstance, is held to be invalid, the remainder of this order and the application of its other provisions to any other individuals or circumstances shall not be affected thereby." *Id.* § 4; *see also League of United Latin American Citizens v. Exec. Off. Of the President*, 780 F. Supp. 3d 135, 221 (D.D.C. 2025), judgment entered, 2026 WL 88056 (D.D.C. Mar. 31, 2026), and aff'd 2026 WL 1991571 (D.C. Cir. July 2, 2026) (while the Supreme Court has never specifically addressed the severability of Executive Orders, it has "assumed, *arguendo*, that the severability standard for statutes also applies to Executive Orders" and as a result applied a presumption in favor of severability where, as here, the President expressed such a preference. (internal citations omitted)). And that makes sense—the Order's provisions speak for themselves and stand on their own, with different historical and legal justifications for each. So where, as here, a law's "provisions are properly considered severable, [the plaintiff] must show injury, causation, and redressability with respect to each provision it challenges." *Advantage Media, LLC.*, 456 F.3d at 800-01 (collecting cases); *see also Midwest Media Prop., LLC v. Symmes Twp.*, 503 F.3d 456, 464 (6th Cir. 2007) (similar and collecting cases). Even if "Patricia" can show that *her* challenge to the 2026 Executive Order is meritorious (she cannot), it would speak only to Section 2(b)(iv), nothing else. And even if all of the named Plaintiffs have standing, Plaintiffs have provided no evidence that any named class member would be subjected to and thus injured by the alien enemies exception. At a minimum, Plaintiffs lack standing to challenge

that exception. *See Trump v. California*, 2026 WL 2473573, at *2 (U.S. Aug. 24, 2026) (per curiam) (assessing standing for each provision of an executive order).[3]

**B. Plaintiffs' proposed class is flawed and classwide injunctive relief is improper.**

The Supreme Court has already warned against providing more than "complete relief" to the parties before the court through improper universal injunctions. *Trump v. CASA, Inc.*, 606 U.S. 831, 854-55 (2025). And though the Supreme Court blessed the continued use of class-action lawsuits to seek broad injunctive relief, it has always warned that class certification "is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (quotation omitted). Absent "scrupulous adherence to the rigors of Rule 23," the "universal injunction will return from the grave under the guise of 'nationwide class relief.'" *CASA, Inc.*, 606 U.S. at 868 (Alito, J., concurring). Courts therefore "should … be vigilant against" the "potential abuse[]" of "class certification." *Id.* Far from "scrupulous[ly] adher[ing] to the rigors of Rule 23," *id.*, Plaintiffs' putative class flouts them entirely. This Court should deny Plaintiffs' Motion for Class Certification or at least strictly limit the sweeping relief requested.

Start with the requirement that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry exists to uncover conflicts between the named representatives and the absent class members. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). As explained, at minimum Plaintiffs lack a class representative who can challenge the alien enemies provision of the Executive Order. But Plaintiffs' class definition nonetheless

[3] And Plaintiffs have never traced their particular injuries to the actions of the numerous Defendants in this case. Maybe Edward is injured by the State Department but not HUD. That is a problem all the named Plaintiffs face; they do not explain how each Defendant will cause them harm. As such, they lack standing to enjoin those Defendants. Thus, properly understood, all but a sliver of Plaintiffs' suit withers away on standing.

purports to sweep in all persons "for whom either parent is or will be categorized by the government as falling within §§ 2(a)-(c) of" the 2026 Executive Order. Compl. ¶ 62.

Neither are "the claims or defenses of the representative parties … typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality depends on whether the "claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." *J.D.*, 925 F.3d at 1322 (citations omitted). "Patricia's" claims are not typical of the entire putative class's, as the sorts of arguments "Patricia" would make that her child should be entitled to citizenship would differ greatly from the arguments of an alien enemy or birth tourist. To that end, this Court should apply the same reasoning to restrict any class to only children subject to the 2026 Executive Order, not parents. The court in *Barbara* determined, "the harms to the parents of children denied citizenship are (a) not the subject of the specific claims in the complaint, which refer to the Executive Order's denial of citizenship to children, and (b) would not necessarily meet Rule 23(a)'s requirements for commonality and typicality as the enumerated harms are factually and legally diverse." *Barbara v. Trump*, 790 F. Supp. 3d 80, 90-91 (D.N.H. 2025), *aff'd*, 146 S. Ct. 2438 (2026) (footnote omitted). This only highlights the factually and legally diverse nature of the challenge to the 2026 Executive Order given the distinct categories and applicability.

For very similar reasons, there are no "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This Court cannot "resolve an issue that is central to the validity of each one of the claims in one stroke." *Barbara*, 790 F. Supp. 3d at 92 (quoting *Wal-mart*, 564 U.S. at 350). The claims, defenses, and legal theories involved in the 2026 Executive Order are too varied for such simplistic resolution. The exception for alien enemies, the carve-out for foreign government employees (defined to include international-organization employees), and the category for birth tourists are each premised on different historical and common-law underpinnings. Plaintiffs

nonetheless claim that they satisfy commonality (and, relatedly, typicality and adequate representation) because each of their class members will have "suffered the same injury—denial of citizenship, and its concomitant rights and duties, by the Executive Order." Class Cert. Mot.10 (quoting *Wal-mart*, 564 U.S. at 350). But the Supreme Court has already rejected the notion that commonality's "same injury" requirement "mean[s] merely that [all class members] have all suffered a violation of the same provision of law." *Wal-Mart Stores*, 564 U.S. at 349-50. Rather, it requires "a common contention" of "such a nature that it is capable of classwide resolution." *Id.* at 350. Whether the 2026 Executive Order has the correct conception of the alien enemy exception, the foreign-government exception, and the application of the common law is not such a question.

Even numerosity—normally a low bar—is inadequately addressed by Plaintiffs. Class Cert. Mot. 4-9; *see also Wal-mart*, 564 U.S. at 350-51 (discussing the rigorous analysis required for the court to be satisfied that all of the prerequisites of Rule 23 are satisfied). To demonstrate that numerosity is met, Plaintiffs point to the "more than 124,000 foreign mission members and dependents." Class Cert. Mot. 6. But the only properly represented class members before this Court are *international-organization* employees with international-organization immunity, and Plaintiffs do not give a hint as to how many of *those* are likely to have children soon while present in the United States and without a single U.S. Citizen parent. They simply apply general statistics on pregnancy in the United States to a unique population of foreign workers. And Plaintiffs offer nothing to the Court as to how many alien enemies are present in the United States other than baldly claiming the government may erroneously label anyone an alien enemy, relying on asylum applications to draw an inference it could be numerous. *Id.* at 7-8. Plaintiffs also rely on the contention that the 2026 Executive Order is retrospective. But that is wrong for the reasons explained. Thus Plaintiffs have to rely on children likely to be born in the near future, which is highly speculative and unproven. Numerosity remains Plaintiffs' burden, and they have only provided this Court with supposition.

In addition, Rule 23(b)(2) requires that any "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Such classes are also mandatory and binding. This creates two problems. First, as explained, the class members are subject to different exceptions, have different arguments, and thus relief. That is especially true where some class members may be injured by the guidance of some Defendants but not others. Accordingly, a single injunction cannot provide relief to the whole class equally. *See Wal-Mart*, 564 U.S. at 360.

Second, the district court in *CASA* certified a class identical to the one in *Barbara* and granted preliminary relief to that class. *CASA, Inc*, 838 F. Supp. 3d at 517. The entire point of Rule 23(b)(2) classes is that they are mandatory and binding. *See Wal-Mart,* 564 U.S. at 362 ("For that reason," Rule 23(b)(2) classes are "mandatory classes," with "no opportunity" for "class members to opt out."). So the entire class gets the benefit of injunctive relief but also the class is stuck with a loss to avoid serial litigation by individuals or similar classes. *See* Fed. R. Civ. P. 23(c)(3) (providing that "the judgment in a class action" applies to "those whom the court finds to be class members," "[w]hether or not [the judgment is] favorable to the class"); Order at 6, *Ojukwu v. Lyons, et al.*, No. 26-3891 (6th Cir. Oct. 9 2026) (if the "the class's claim fails on the merits, the failed class claim binds all class members." (quotation omitted)). While the class Plaintiffs seek to certify is not the exact same as the one in *CASA*, the claims and relief sought are the same and there is substantial overlap in the classes. *See* PI Mot. at 1 (acknowledging "significantly overlapping set of people"); *cf.* Compl. ¶¶ 21-22, 25 and Supp. Compl., *CASA v. Trump*, 8:25-cv-201 (D. Md. Jan. 21, 2025); *id.* ECF No. 177 ¶¶ 19-21 (supplement to the amended complaint). It cannot be that Plaintiffs can slightly modify a class definition to evade the binding nature of a similar Rule 23(b)(2) class. That would, in practice, allow innumerable bites at the same apple for broad class wide relief, defeating the whole purpose of the rule. Simultaneous Rule 23(b)(2) classes bringing the same claims and seeking the same relief with substantial overlap is anathema to the rule. And it violates the basic principle that "duplicative litigation between two federal

district courts should be avoided." *D.C. ex rel Chaplick v. Fairfax Cnty. Sch. Bd.*, 171 F.4th 255, 265 (4th Cir. 2026) (dismissing plaintiffs' claims as duplicative of a later filed class action because "[t]he cases challenged the same decisions and sought relief for the same injury") *cert. denied*, 2026 WL 2976890 (U.S. Oct. 5, 2026). At a minimum, the class members in *CASA* should be excluded from the class definition and relief in this case to prevent double relief. *See* Fed. R. Civ. P. 23(c)(3). The class can instead be defined in reference to children who may be subjected to the 2026 Executive Order, whose mothers are aliens here legally and not temporarily, and whose fathers are neither LPRs nor U.S. citizens.

**C. Plaintiffs' claims fail on the merits.**

Even assuming Plaintiffs have standing and that they have proposed an appropriate class, they cannot succeed on their central merits claim that the 2026 Executive Order runs afoul of *Barbara* and *Wong Kim Ark*. Each of the categories in the Executive Order finds a ready echo in the common law relied upon by *Barbara*. At a minimum, Plaintiffs cannot justify a facial challenge to the entire 2026 Executive order because it requires them to "establish that no set of circumstances exists under which the [Executive Order] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Plaintiffs cannot do so.

The children of "a foreign government employee" exception (2026 Executive Order § 2(b)) recognizes the "intersovereign concerns" inherent in claiming allegiance from such employees, *Barbara*, 146 S. Ct. at 2450, and maps onto *Wong Kim Ark*'s exception for "children of foreign sovereigns or their ministers," including those "employed in any … official capacity" by an extranational entity, 169 U.S. at 652, 674, 693. Likewise, the exception for children of "alien enem[ies]" (2026 Executive Order § 2(a)) corresponds with *Wong Kim Ark*'s exception for children of "enemies within and during a hostile occupation of part of our territory," 169 U.S. at 693. And the exception for birth tourists derives from the common-law rule that fraudulent transactions are

"voidable." Restatement (2d) of Contracts § 164(1); *see also Barbara*, 146 S. Ct. at 2453 (adhering to *Wong Kim Ark*'s holding that "the Citizenship Clause incorporated the common law").

The same goes for 8 U.S.C. § 1401. That Section 1401 uses the same phrase—"subject to the jurisdiction thereof"—as the Fourteenth Amendment confirms that the statute incorporates the Constitution's meaning. Even Plaintiffs acknowledge that "'[w]here Congress employs a term of art obviously transplanted from another legal source, it brings the old soil with it.'" PI Mot. at 10 (quoting *George v. McDonough*, 596 U.S. 740, 746 (2022)). Thus there is no reason to interpret 8 U.S.C. § 1401 as further limiting the exceptions to birthright citizenship allowed under the Fourteenth Amendment. When courts consider a suit brought under 42 U.S.C. § 1983, they do not ask what case law interpreting the Fourteenth Amendment said at the time of Section 1983's enactment; rather, they interpret that cause of action to enforce rights *actually* secured by the Constitution. Similarly, if the Fourteenth Amendment provides for these exceptions (it does), so too does Section 1401.

Plaintiffs largely rely on *Doe v. Trump* for their contention that 8 U.S.C. § 1401 does not allow for the exceptions enumerated in the 2026 Executive Order. That reliance is misplaced. Like *Barbara*, *Doe* was also a challenge to the 2025 Executive Order where the government raised various theories that do not apply in a post-*Barbara* world. That non-binding case, as in *Barbara*, did not address all exceptions to birthright citizenship or their scope, as they were not at issue. The 2026 Executive Order specifically accounts for the reasoning of the Supreme Court, which has now opined on the relevant constitutional issues, and therefore the relevant available exceptions. As discussed *supra* at 3, the 2025 Executive Order that was ultimately enjoined by the Supreme Court in *Barbara* was untethered to any of those categories. *Barbara*, 146 S. Ct. at 2456, 2458. Conversely, the 2026 Executive Order is specifically tethered to those categories and incorporates *Barbara's* reasoning. Nor can Plaintiffs' reliance on legislative history alter the meaning of the Constitution, common law, or the statute. *See* PI Mot. at 11-12. Much of it does not address these exceptions in any event. *Id.*

(quoting State Department determination on alien giving birth on Ellis Island without explaining why exceptions would not apply). At bottom, Plaintiffs' reliance on 8 U.S.C. § 1401 turns on Justice Kavanaugh's concurrence, which actually opined that Plaintiffs' Fourteenth Amendment arguments were wrong but was not joined by a majority. *Id.* Thus the question for both the Fourteenth Amendment and 8 U.S.C. § 1401 is what exceptions the Constitution allows to birthright citizenship. With that understanding, none of Plaintiffs' critiques of the 2026 Executive Order's exceptions passes muster.

*First*, Plaintiffs repeatedly claim that *Wong Kim Ark* announced a "closed set" of exceptions to birthright citizenship. PI Mot. 9, 12. But Plaintiffs make little effort to show that this "closed set" understanding of the Fourteenth Amendment was adopted by *Barbara*. *See id.* at 7 (citing only Justice Kavanaugh's concurrence in the judgment). *Barbara* itself evinces no such limitation, instead referring to open-ended concepts such as "extraterritorial fiction[s]" and areas "temporarily outside [the sovereign's] control." 146 S. Ct. at 2445, 2449, & 2554. Indeed, the undisputed exception for children of "quasi-sovereign Indian tribes" is proof that the Citizenship Clause's exact application is not frozen in English common law. *Id.* at 2446 (noting that such tribes presented "a novel situation[] unknown to England"). Children of alien enemies and foreign-government employees can easily be conceived as falling within an "extraterritorial fiction." Even considering any "closed set" limitation posited by the Court, it is still possible 2(a) could be read consistent with the hostile occupation concept in *Wong Kim Ark in the future*, which means this should be address in an "as applied", instead of facial challenge. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) ("[A] plaintiff cannot succeed on a facial challenge unless he 'establishes that no set of circumstances exists under which the [law] would be valid,' or he shows that the law lacks a 'plainly legitimate sweep.'") (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) and *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Plaintiffs cannot meet this high bar, thus, any challenge should be as applied.

But history has long understood a broader meaning of the word "invasion" that does not require holding an unknown amount of land for an unknown amount of time to constitute an "occupation." *See* Robert G. Natelson & Andrew T. Hyman, *The Constitution, Invasion, Immigration, and the War Power of States*, 13 Brit. J. Am. Legal Stud. 1, 21, 23-24 (2024). And the whole point of the Alien Enemies Act, which covered invasions from alien enemies, was to capture spies and saboteurs from France residing in the country. *See* Stephen I. Vladeck, *Enemy Aliens, Enemy Property, and Access to the Courts*, 11 Lewis & Clark L. Rev. 963, 968 (2007); 8 Annals of Cong. 1574 (Rep. Rutledge). The British common law has long held that a "perpetual" "alien enemy" maintains status as a "perpetual enemy" "though there be no wars by fire and sword between them." *Calvin's Case*, 7 Co. Rep. 1, 17a (1773). The exceptions to the Fourteenth Amendment at least encompass such alien enemies, and this defeats Plaintiffs' facial challenge to the Executive Order.

*Second*, even if *Barbara* set forth a closed set of exceptions to birthright citizenship, Plaintiffs take an all-too-crabbed view of the ones the Supreme Court announced. Plaintiffs begin by attempting to relegate *Barbara*'s and *Wong Kim Ark*'s exception for children of alien enemies to the dustbin of history, and tell the Court that it is not relevant today. PI Mot. 7-9. In Plaintiffs' view, the important part of that exception is the phrase "in hostile occupation of the place where the child was born." *Id.* at 13 (quoting *Wong Kim Ark*, 169 U.S. at 658). But Plaintiffs never explain—nor can they—how an alien *enemy's* presence on this Nation's soil can be anything other than "hostile." Plaintiffs' proposed rule amounts to little more than that—so long as an alien enemy keeps his hostility a secret—his child will become a U.S. citizen. That makes little sense even under Plaintiffs' proposed formulation that the exception's lodestar is whether "the laws of the nation [can] no longer be rightfully enforced" on occupied land. *Id.* (quoting *United States v. Rice*, 17 U.S. 246, 254 (1819) (citation modified)). In no meaningful sense are the laws of the United States enforced in the household of an actively hostile alien enemy of whom the Nation is not even aware.

Plaintiffs also miss the mark in criticizing the new Executive Order's exception for fraudulent transactions. PI Mot. 16. Again, unlike the alien enemies and foreign government employee exceptions, the fraudulent transaction exception is not based on a construction of the phrase "subject to the jurisdiction thereof." Rather, it is based on the common-law principle that fraudulent transactions are voidable. *See Barbara*, 146 S. Ct. at 2449 (explaining that the Citizenship Clause "mirror[s]" the common law). Plaintiffs are thus wrong that there "is no such exception" in Supreme Court precedent, PI Mot. 16; to the contrary, it is rooted in the common law which *Barbara* never purported to seal off from the interpretation of the Fourteenth Amendment. And the 2026 Executive Order's category for birth tourists is entirely in keeping with the law's treatment of citizenship in other contexts. For example, the INA provides that it is "the duty of the United States attorneys for the respective districts" to institute proceedings in a federal district court to "revok[e] and set[] aside the order admitting [a] person to citizenship" if "such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a).

Plaintiffs spend the bulk of their merits analysis on the foreign-government employee exception. PI Mot. 14-16. According to Plaintiffs, the category of employees of "governments and international organization[s] that possess international-organization immunity but who are not themselves entitled to full diplomatic immunity" transgresses Supreme Court precedent. PI Mot. 14. In their view, only children of foreign-government officials with "full diplomatic immunity" fall outside the Citizenship Clause. *Id.* at 14-15 (quoting *Moncado v. Rubio*, 153 F.4th 733, 737 (9th Cir. 2025)). Plaintiffs are wrong.

For one, they again take an overly myopic view of a category that the Supreme Court has broadly defined. *Wong Kim Ark* emphasized multiple times that the plaintiff's parents were "not employed in any diplomatic or official capacity under the Emperor of China," suggesting that the

exception may be as broad as applying to those who are "employed in any diplomatic *or official* capacity" by an extranational entity. 169 U.S. at 705. And *Barbara* speaks of "representatives of foreign sovereigns." 146 S. Ct. at 2452. On their own terms, therefore, *Barbara* and *Wong Kim Ark* do not limit the foreign-government employee exception to "foreign ministers," contrary to Plaintiffs' insinuation. PI Mot. 16.

For another, *Barbara* and *Wong Kim Ark* do not share Plaintiffs' single-minded fixation on "full diplomatic immunity." PI Mot. 14. To be sure, immunity is *relevant* to whether someone is "subject to the jurisdiction" of the United States. But *Barbara* chiefly justified the exception for foreign-government employees upon "intersovereign concerns" and as a "fiction of extraterritoriality." 146 S. Ct. at 2445, 2450. And *Wong Kim Ark* did not limit itself to employees serving in a "diplomatic … capacity," but rather suggested that the exception may be as broad as to apply to employees serving in *any* "official capacity." 169 U.S. at 705. All of those rationales apply full well to foreign-government and international-organization employees, whether or not they have full diplomatic immunity.

And last, even *if* immunity is the first and last word on the applicability of the foreign-government employee exception, Plaintiffs hardly justify their "full diplomatic immunity" requirement. Indeed, that phrase appears nowhere in *Barbara* or *Wong Kim Ark*, but instead is taken from an out-of-circuit case. PI Mot. 15 (citing *Moncada*, 153 F.4th at 737).

## II. The Remaining Injunction Factors Favor Defendants.

Plaintiffs cannot carry their burden of demonstrating irreparable harm. It is not sufficient that Plaintiffs complain of the mere possibility of irreparable injury but must demonstrate that irreparable injury is *likely* in the absence of an injunction. *Winter*, 129 U.S. at 22 (emphasis in the original). Here, there is little threat of harm because Plaintiffs lack *standing* as to at least some aspects of the 2026 Executive Order. And without injury-in-fact as to those aspects of the Executive Order, they have *a fortiori* failed to establish *irreparable* injury.

Moreover, "[a]n unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm." *Newdow v. Bush,* 355 F.Supp.2d 265, 292 (D.D.C.2005). That is the case here. The 2026 Executive Order was issued on August 6, 2026. Rather than work on a new complaint, class certification, and preliminary injunction motion, Plaintiffs sought clarification and modification in *Barbara*. *Barbara*, No. 1:25-cv-244, ECF No. 80. In the meantime, the district court in *CASA* already granted preliminary relief to an identical class on September 2. *CASA, Inc.*, 838 F. Supp. 3d at 517. Defendants then issued guidance on September 4, 2026. Only then did Plaintiffs move for a new class and injunction on September 9, 2026. *Barbara*, No. 1:25-cv-244, ECF Nos. 90-92. But the district court made clear the case is distinct and should be brought separately and Plaintiffs withdrew their motions on September 23, 2026. *Barbara*, No. 1:25-cv-244, ECF No. 96. Plaintiffs then waited another 5 days to file this new case that is materially identical on September 28. ECF No. 1. After filing, they then waited 11 days to file for a preliminary injunction that is materially identical on October 9, 2026. ECF Nos. 12, 13. Thus Plaintiffs have sought emergency relief over two months after the 2026 Executive Order was signed and over a month after the guidance issued. All of this despite the fact that another set of Plaintiffs was able to move expeditiously and get relief for much of the class here. That undue delay militates against a finding of irreparable harm. *See Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (44-day delay "bolstered" the court's "conclusion that an injunction should not issue"); *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014) (36 days was too long); *Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C. 2000) (two-month delay "militate[d] against a finding of irreparable harm").

By contrast, the Government *would* suffer patently irreparable harm should this Court grant Plaintiffs' requested classwide relief. The 2026 Executive Order is enforceable today, except against members of the *CASA* class. Any attempt to prevent "the Government from enforcing its policies"

inflicts an irreparable harm on the Government. *See CASA, Inc.*, 606 U.S. at 859-60 (2025); *cf. Maryland v. King*, 567 U.S. 1301, 1303 (2010) (Roberts, C.J., in chambers) ("[A]ny time a state is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (alteration in original)). That is especially true here, given the overbreadth of the preliminary injunction that Plaintiffs seek. As the Supreme Court explained, "[w]hen a federal court enters a universal injunction against the Government, it improperly intrudes on a coordinate branch of the Government and prevents the Government from enforcing its policies against nonparties." *CASA, Inc.*, 606 U.S. at 859; *see also California v. Trump*, 2026 WL 2473573, at *4-5. Classwide relief that does not comply with Rule 23 or class standing requirements is similarly improper. *CASA, Inc.*, 606 U.S. at 867-68 (Alito, J., concurring).

Finally, the balance of the equities and the public interest favor Defendants. Defendants agree with Plaintiffs on one thing: American citizenship is precious. At stake in this case is the Government's ability to effectuate the guarantees and limits of the Citizenship Clause and the INA. *See CASA, Inc.*, 606 U.S. at 860-61. Every day enforcement is enjoined going forward, additional people may be born and receive all the benefits of citizenship when they should not—including the children of dangerous alien enemies, foreign operatives, and those committing fraud on the United States to ensure their children receive the benefits. Those benefits cannot be easily clawed back once granted. The public interest clearly favors Defendants.

## III. This Court Should Stay Any Preliminary Injunction Pending Appeal And A Bond Should Be Required.

To the extent the Court issues any injunctive relief, Defendants respectfully request that such relief be stayed pending the disposition of any appeal that is authorized. In evaluating a stay request, courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the

public interest lies." *Nken*, 556 U.S. at 426. For the reasons explained above, Defendants are likely to prevail on the merits, and the remaining stay factors would favor relieving Defendants of an injunction falling far outside the scope of this case. *See CASA*, 606 U.S. at 860–61.

Additionally, if the Court enters a preliminary injunction, Defendants are entitled to a bond pursuant to Rule 65(c) of the Federal Rules of Civil Procedure. Under that rule, "[t]he court may issue a preliminary injunction … *only if* the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (emphasis added). Plaintiffs' requested preliminary injunction seeks to require Defendants to extend federal benefits to persons deemed by Defendants to lack an entitlement to them. Assuming (as Plaintiffs must to ask for such relief in the first place) that such class members exist, the cost to the United States would be substantial, and this should be reflected in the bond accompanying a preliminary injunction. Plaintiffs reliance on cases imposing no bond in their discretion ignores the mandatory language of Rule 65(c). There is no legal basis to dispense with this key requirement which is supposed to ensure only serious and meritorious motions for extraordinary relief are sought.

## CONCLUSION

This Court should deny Plaintiffs' Motions for a Preliminary Injunction and Class Certification.

Dated: October 21, 2026

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

TY TREJO
Counsel to the Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

BRAD P. ROSENBERG
Chief Litigation Counsel

*/s Kathleen C. Jacobs*
KATHLEEN C. JACOBS
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: 202-598-7615
Email: kathleen.c.jacobs@usdoj.gov

*Attorneys for Defendants*